UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN BERNSTEIN, ET AL | : | NO.: 3:02 CV 1740 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF SHERMAN | : | August 2, 2004 |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

I.    INTRODUCTION

The Plaintiffs, Stephen and Phyllis Bernstein, initiated an action against

the Defendant, Town of Sherman, in the Superior Court, Judicial District of

Danbury on September 20, 2002 for injuries sustained during a bike tour of the

Connecticut countryside.  Mr. Bernstein sustained serious and permanent

injuries (quadriplegia) after the bicycle he was riding came into contact with

defective roadway in the Town of Sherman, causing him to lose control of the

bicycle.  The first count was brought pursuant to Connecticut General Statutes

§13a-149 for the injuries sustained by Mr. Bernstein as a result of the defective

roadway.  The second count was brought by Phyllis Bernstein for loss of

consortium.  (Amended Complaint dated March 5, 2003).  On September 30,

**ORAL ARGUMENT REQUESTED**

2002, the matter was removed to this Court on the basis of diversity jurisdiction.

The Defendant, Town of Sherman, has now moved for summary judgment as to Counts One and Two of the plaintiffs' complaint. The Defendant argues that there is no genuine issue as to any material fact and that it is immune from suit because it is not the party bound to keep the area of road where Plaintiff fell in repair. The Town of Sherman also argues that the area of roadway within the Town of Sherman leading up to the New Milford town line is not defective as a matter of law. In addition, the Defendant, Town of Sherman, also claims that there is no genuine issue as to any material fact concerning Count Two of the Plaintiff's Amended Complaint, as loss of consortium claims are not available in conjunction with Conn. Gen. Stat. §13a-149, which permits recovery only by the injured traveler.

The Defendant's motion for summary judgment should be denied. Mr. Bernstein's injuries were caused by the condition of the roadway where he fell, which was defective and dangerous because the Defendant Town of Sherman failed to properly repair and maintain it. Mrs. Bernstein's loss of consortium claim may be brought with a highway defect action. At a minimum, the Defendant's motion raises genuine issues of material fact, and, therefore, summary judgment is inappropriate.

II.    <u>STATEMENT OF FACTS</u>

This case involves a claim arising from the tragic injuries sustained by Stephen Bernstein on April 14, 2002, on Church Road.  At the time of the accident, Stephen and Phyllis Bernstein were participating in a bicycle tour that traveled through the Connecticut countryside.  (Deposition Transcript of Debra Bernstein, dated October 17, 2003, Ex.1, at 12; Deposition Transcript of Gerald Brooks, dated October 20, 2003, Ex. 2 at 59-62 (hereinafter "Depo. Tr. Brooks"))[1] This bicycle tour began by traveling northbound on Route 39 for one mile before the bicycle riders took a right onto Church Road.  (<u>See</u> Brooks Country Cycling Tours Connecticut Countryside Day Trip Cue Sheet, Ex. 3;  Depo. Tr. Brooks at 64-65).

As he traveled on Church Road, Mr. Bernstein saw that the road ahead was deteriorated.  The road surface was rutted with potholes and gravel.  Once he saw the area of disrepair, it was too late to do anything about it.  (Deposition Transcript of Stephen Bernstein, dated June 3, 2003, Ex. 4, at 40-42) (hereinafter "Depo. Tr. S. Bernstein").

When Mr. Bernstein traveled over this deteriorated road surface, his bicycle became unsteady. Mr. Matthew Speier, one of the leaders of the bicycle

---

[1] The exhibit number for the deponents' deposition transcripts cited herein are included the first time the transcript is cited.   A "List of Exhibits" filed herewith as a separate document called Notice of Manual Filing identifies by number and brief description all exhibits, including the deposition transcripts.

tour, was near Mr. Bernstein when he fell.  He testified that Mr. Bernstein's bicycle shimmied for about 5 to 10 seconds prior to his fall.  According to Mr. Speier, the condition of a road surface, such as cracking, could play a role in causing shimmying.  (Deposition Transcript of Matthew Speier, dated November 12, 2003), Ex. 5 at 48-49, 127 (hereinafter "Depo Tr. Speier").

Mr. Bernstein testified that the front tire of his bicycle hit a portion of broken up road, which he described as a pothole, rutted road or gravel.  (Depo. Tr. S. Bernstein at 47-50).  As a result, the bicycle stopped and Mr. Bernstein was catapulted over the handlebars.  (*Id.* at 50).  His body then struck a wooden support post before he ultimately crashed, head first, into the road with his head lodged at the base of a support post.  (Depo. Tr. Speier at 67-68).  Mr. Bernstein testified that he had experienced a "sensation of floating through the air, landed, couldn't move or feel anything below my chest level." (Depo. Tr. S. Bernstein at 45, 50). This tragic fall resulted in serious permanent injury to Mr. Bernstein.

Additional facts will be discussed in the memorandum, as necessary. Plaintiffs' statement pursuant to Local Rule 56(a)(2) and a list of the exhibits are attached, and have been filed simultaneously with this memorandum.

II.     ARGUMENT

    A.     STANDARD OF REVIEW ON SUMMARY JUDGMENT

"The role of the court on summary judgment is 'not to try issues of fact, but only to determine whether there are issues of fact to be tried.' *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial,' *Anderson*, 477 U.S. at 256, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against who summary judgment is sought. *Anderson*, 477 U.S. at 255. 'Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party.' *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002)." *Jones v. City of Hartford*, 285 F.Supp. 2d 174, 180 (2003).

B.   SINCE THE DEFENDANT, THE TOWN OF SHERMAN, IS THE
     PARTY BOUND TO KEEP THE ROADWAY WHERE THE
     PLAINTIFF WAS INJURED IN REPAIR, SUMMARY JUDGMENT
     SHOULD NOT BE GRANTED

The Defendant argues that there is no genuine issue as to any material

fact in the Plaintiffs' complaint regarding what town was bound to keep the

section of the roadway where Mr. Bernstein fell in repair.  The Defendant argues

that the exact location where he fell was on a road within the boundary of New

Milford and that therefore, New Milford was bound to keep that section of the

road in repair.  The Defendant argues that it was immune from suit because it is

not the party bound to keep the roadway in question in repair.[2]

Contrary to Defendant's assertions, the evidence demonstrates that the

accident occurred in the Town of Sherman, and that Sherman was bound to keep

the roadway in question in repair.  Section 13a-149 of the General Statutes

provides that "[a]ny person injured in person or property by means of a defective

road or bridge may recover damages by the party bound to keep it in repair."

Conn. Gen. Stat. § 13a-149.  The Connecticut Appellate Court has held that

_____

[2] The Defendant has <u>not</u> claimed that Plaintiffs' notice was defective, nor can it.
Plaintiffs' notice includes the requisite elements.  Defendant conducted an investigation
of the road in question.  Defendant's claim is that the accident was not within its
boundaries.  In any event, the adequacy of notice under § 13a-149 is a question of fact for
the jury.  <u>Salemme v. Seymour</u>, 262 Conn. 787, 817 A.2d 636 (2003).  Moreover, given
the fact that Sherman patched potholes on Church Road in the area of Plaintiffs' accident,
it was well aware its defective condition.  (<u>See</u>, <u>infra</u>, at page 15 of this memorandum.)

"[o]wnership of the property in question does not establish liability under Conn. Gen. Stat. §13a-149…  Rather, it is the governmental entity charged with the duty to keep the property in repair on which the statutes impose liability under certain circumstances." *Coughlin v. Waterbury*, 61 Conn. App. 310, 314-315, 763 A.2d 1058, 1060-1061 (2001).  This duty rests on the entity, which has control of the area or has the responsibility of maintaining the area.  *Agranov v. Town of Guilford*, No. 307919, 1993 Conn. Super. LEXIS 454, at *8-10 (Conn. Super. Ct. Feb. 16, 1993).  "Whether there is a defect in such proximity to the highway so as to be considered in, upon, or near the travel path of the highway must be determined on a case by case basis after a proper analysis of its own particular circumstances, and is generally a question of fact for the jury." (internal quotation marks omitted) *Baker v. Ives*, 162 Conn. 295, 294 A.2d 290 (1972)[3]; *Klimas v. Connecticut Water Co.*, No. 98-0147878, 2000 Conn. Super. LEXIS 1402, at *5 (Conn. Super. Ct. May 31, 2000).   Conflicting evidence regarding the true party bound to keep the roadway in repair creates a genuine issue of material fact.  *Coughlin,* 61 Conn. App. at 315.

---

[3] Connecticut courts have established that no material difference exists in the rights provided and the obligations imposed under the state highway defect statute, § 13a-144 and the municipal highway defect statute, § 13a-149.  *Baker,* 162 Conn. at 298, 303.

**1.    The defective roadway that caused Mr. Bernstein's injuries is in the Town of Sherman.**

The evidence demonstrates that the accident occurred in the Town of Sherman, and that it is the entity bound to keep the roadway in repair where Mr. Bernstein fell.  At a minimum, this question presents a genuine issue of material fact, which cannot be resolved by summary judgment.  *Jones,* 285 F.Supp. 2d at 180; *Agranov*, 1993 Conn. Super. LEXIS 454, at *8-10.

On April 14, 2002, Sherman EMS and the Campion Ambulance Service responded to the call for an ambulance for Mr. Bernstein.  The Campion Ambulance Service Report documented his fall at 107 Church Road, <u>Sherman</u>, Connecticut 06784 (emphasis added).  (*See* Campion Ambulance Service Report, Ex. 6).  107 Church Road is the address of Richard McGoldrick's house. (*Id.*)

Church Road is located in the Town of Sherman.  It runs from its intersection with Route 39 in a northeasterly direction to the border of New Milford.  (*See*  Map of Sherman, marked as Plaintiff's Ex. 2 at deposition of Mr. Borkowski), (Ex.7); Fairfield County Atlas, copy of p. 32, U 3-4; V3 (3d large scale ed. : Hagstrom, 1994, Ex. 8).

The deteriorated road that caused Mr. Bernstein's bicycle to shimmy and fall and the place where he landed are in the Town of Sherman.  Mr. Speier, a

leader of the tour who had been bicycling near Mr. Bernstein, witnessed the fall. At his deposition, he testified that Mr. Bernstein fell near a part of a fence that was next to a gate.  He remembered the location because he saw the ambulance personnel go through the gate to get to the other side of the fence so that they could stabilize Mr. Bernstein's head, which was at the base of the fence.  (Depo. Tr. Speier at 124-125)  Mr. Speier identified this gate and fence in a photograph that he was shown at his deposition, which previously had been introduced at Mrs. Bernstein's deposition.  (*See* Depo. Tr. Speier at 37, Photograph Ex. D at Mrs. Bernstein's deposition) (Ex. 9)

As shown in this photograph, Ex. 9, the gate that Mr. Speier identified is a wooden slatted gate.   This is the same gate referred to by Mr. John Serth, Plaintiffs' engineering expert, in his investigation of the accident.  This wooden gate and a telephone pole, which is further north, are depicted in photographs taken by Mr. Serth.   (*See, e.g.*, Photograph taken by Mr. Serth, Ex. 10)[4]  The telephone pole in the pictures taken by Mr. Serth is SNET telephone 2542 E2. (*See* Affidavit of Cynthia C. Bott and attached photographs, Ex. 11).

The telephone pole -- SNET telephone pole 2542 E2 -- is on the town line between Sherman and New Milford.  This pole is identified in a Class A2 survey

---

[4]The photographs taken by Mr. Serth during his investigation were produced at his deposition on March 30, 2004.

map filed in the Sherman Land Records. (*See* Certified copy of A-2 Survey Map 1449 in the Sherman Land Records, Church Road, February 1990 (hereinafter "A-2 Survey Map 1449"), Ex. 12).  On this map, the SNET pole 2542 E2 is illustrated by a small circle on Church Road in the lower corner, which is located directly on the town line between Sherman and Gaylordsville.  (Gaylordsville is a section of New Milford.)  The wooden gate is south of SNET pole 2542 E2, and well within the borders of the Town of Sherman.

Mr. Serth testified that the roadway began deteriorating by the wooden slatted gate on Church Road.  (Depo. Tr. John Serth,  Ex. 13, at 111-112) (hereinafter "Depo. Tr. Serth").  The defective condition of the road beginning around the slatted gate is shown in Defendant's Exhibit 1F, a photograph introduced at Mr. Serth's deposition.  (*See* Ex. 14)[5]  Both the wooden slatted gate and the deteriorated road north of it on Church Road are located south of the SNET telephone pole 2542 E2, and therefore, within the boundary of the Town of Sherman.

Mr. Speier, the Bernsteins and Mr. Serth may vary somewhat in their recollection of the precise location of the defective road that caused the fall and the precise location where Plaintiff landed after his fall.  Inconsistent recollections

---

[5] This photo is taken from the opposite direction (north looking south), looking back at the direction from which Mr. Bernstein was traveling, Depo. Tr. Serth at 110.

are not unusual, particularly if the witness has been involved in the catastrophic accident.  Their recollections should be tested by the jury rather than on a motion for summary judgment, since it is the province of the jury to determine the credibility of witnesses.  Nolan v. Nationwide Mut. Ins. Co., 60 Conn. App. 68, 758 A. 2d 432 (2000).

The Defendant purports to mark the town line between Sherman and New Milford by a picture of Mr. Donald Borkowski and Mr. Patrick R. Hackett pointing to a line going straight across Church Road.  Mr. Borkowski is the highway supervisor of Sherman and Mr. Hackett, the director of public works for New Milford. Their affidavits, which are essentially the same, state that the line they are pointing to is the town line.  (*See* Affidavits of Borkowski, Hackett, Defendant's Motion for Summary Judgment, Ex. F, Ex.1; Ex. G, Ex.1). Defendant argues that their "town line" shows that the area where Mr. Bernstein fell was in New Milford rather than Sherman.

The Defendant is wrong.  The line that Borkowski and Hackett point to in the photograph is not the town line between Sherman and New Milford.  Their line is further south from and, therefore, conflicts with the town line shown on the A2 Survey Map 1449.  Not only is the line they point to on Church Road in the wrong location, it is also angled incorrectly.  Their line is perpendicular or 90

11

degrees, while the line across Church Road on the A-2 Survey Map 1449 is at an approximate 45 degree angle.

The Borkowski and Hackett affidavits do not rely on the A-2 Survey Map 1449 or other sufficient authority to fix their so-called "town line."  Although they refer to a United States Geological Survey, they have not attached it nor described in any way how it assisted them in fixing their line. Therefore, this reference is not credible.

Although, in order to try to prevail in its motion for summary judgment, the Defendant now claims that it knows exactly where the Sherman town line is, Mr. Borkowski's deposition testimony contradicts both affidavits.  Mr. Borkowski testified at his deposition that he did not "know the exact location" of the town line and did not "know the exact line."  (Deposition Transcript of Donald Borkowski, dated July 17, 2003, Ex. 15, at 75-76 (hereafter "Depo. Tr. Borkowski").  At his deposition, Mr. Borkowski also made varying references to where he thought the town line might be based on what someone had told him.[6]  These statements are inconsistent with one another, and they nevertheless contradict his newly discovered precise knowledge of the town boundary at a line in the pavement drawn at a 90 degree angle across the road.  The credibility of Mr. Borkowski's

---

[6] *See, e.g,* Borkowski Depo. Tr. at 58-59, 76 (a barn, a post, and a stick at the corner edge of the barn.)

varying statements and attestations should be tested by the jury, not on summary judgment.

The above evidence – the ambulance report, Mr. Speier's testimony about Mr. Bernstein's location when the ambulance personnel treated him, the A-2 Survey Map 1449, Mr. Serth's investigation – lead to the conclusion that the accident occurred in the Town of Sherman.   The evidence below of Defendant's repair and maintenance of Church Road further contradicts Borkowski's and Hackett's affidavits as well as  Defendant's position that it is not the party bound to keep Church Road in repair.

    **2.**    **The Town of Sherman was bound to repair and maintain the defective portion of Church Road, which caused Mr. Bernstein's injuries.**

Church Road is a secondary road.  The stated goal of the Town of Sherman is to keep its roads rural and scenic.  (Depo. Tr. Borkowski at 27-28). The evidence demonstrates that the Town Sherman was the entity responsible for the reconstruction, repair and maintenance of all of Church Road, the road that Stephen Bernstein fell on.

Since at least 1992, the Town of Sherman Highway Department has included improvements (reconstruction) of Church Road in their Five-Year, or

Six-Year, Improvement Plans (Exh. 16).[7]  Since 1992 the Town of Sherman has scheduled, through their improvement plans, to allocate $40,000 to $60,000 ro reconstruction of Church Road.  In the July 1, 2000-2006 Six-Year Capital Improvement Plan, an additional $50,000 of resurfacing of the second half of Church Road was scheduled to take place during the 2004-2005 time period. (*Id.*).  Only two of the seven improvement plans disclosed refer to reconstruction on a half of Church Road; the remainder of them had planned reconstruction on all of Church Road.   A reasonable inference can be made that since the Town of Sherman only specified  reconstruction on a portion of Church Road  in  two of the plans, that the remaining plans, which scheduled reconstruction on Church Road without limitation, had planned for reconstruction on all of Church Road.

During his deposition, Mr. Borkowski testified that he is the person responsible for maintaining Church Road.  (Depo. Tr. Borkowski at 84). According to Mr. Borkowski, maintenance includes edging, pothole repairs, tree removal, sight lines, clearing, and things of this nature.  (Depo. Tr. Borkowski at

---

[7]The plans were marked as Plaintiff's Ex. 3 at Mr. Borkowski's deposition.  Unless indicated otherwise, they all state:  "Reconstruction of Church Road" without limitation.  They include the following: (1) Five-Year Capital Improvement Plan - July 1, 1992-1997, Amended April 2, 1993; (2) Five-Year Capital Improvement Plan-July 1, 1994-1999, Amended April 8, 1994; (3) Six-Year Capital Improvement Plan-July 1, 1996-2002, Amended April 12, 1996; (4) Five-Year Capital Improvement Plan-July 1, 1997-2002, Amended April 4, 1997; (5) Six-Year Capital Improvement Plan-July 1, 1996-2002 (with handwritten notation  "1/2", for the first time, after Church Road); (6) Five-Year Capital Improvement Plan-July 1, 1998-2003; (7) Six-Year Capital Improvement-July 1, 2000-2006, indicating, for the first time, resurfacing of second half of Church Road, Ex. 16 )

33).  The Town of Sherman, plows, sands, salts, and handles the roadside sweeping of Church Road. (*Id.* at 45-47).  Although the DeSantis Company, a road maintenance company, is hired annually to sweep the roads in the Town of Sherman, Borkowski testified that he and other members of his department handle the annual sweeping of Church Road themselves.  (*Id.* at 47).

The Town of Sherman maintains the crosspipes (or culverts) and the headwall pipes on Church Road.  (*Id.* at 26-27, 74, 82).  The Town of Sherman annually cleans the crosspipes and outlets on this road.  (*Id.* at  73-74).  Mr. Borkowski also testified about other work they had performed on Church Road. This included guardrail straightening, cable tightening, sight lines, and tree removal.  (*Id.* at 74)  The May 2001 work schedule for the Sherman Highway Department lists the installation and replacement of posts and guardrail tightening on Church Road.  (*Id.* at 119-120; *see also* Sherman's Highway Department Monthly work schedule for May 2001, marked as an exhibit to Borkowski deposition) (Ex. 17).

The Town of Sherman constantly patches Church Road as needed. (Depo. Tr. Borkowski at 74-75).  Referring to the photograph of Church Road showing a red barn on the left and a white house further north in the picture, Mr. Borkowski testified that the Town of Sherman had probably done pothole patching in the area shown in the photograph.  (*Id.* at 64-65, Photograph with red

barns and white house marked as an exhibit at Borkowski deposition) (Ex. 18). According to claims now made in the Borkowski and Hackett affidavits, this area of road is in New Milford, despite the fact that Borkowski said the Town of Sherman patches potholes there.

Mr. Borkowski's deposition testimony revealed that the Town of Sherman maintained Church Road well past the location of Mr. Bernstein's accident, the defective condition of the roadway, the SNET pole 2542 E2, and into the Town of New Milford.  He testified that, as Sherman's Highway Supervisor, he has "always maintained the road to the bridge."  (Depo. Tr. Borkowski at 59-60, 108). The location of this bridge can best be described by referring to Mr. Borkowski's deposition testimony and a photograph he referred to thereat.  (*See* Depo. Tr. Borkowski at 58; Photograph with red barns and white house marked as an exhibit 4 at Mr. Borkowski's deposition) (Ex. 18). Traveling north on Church Road from Route 39, the bridge is located north of the following landmarks in the picture:  a red barn on the left; a white house; another red barn; a bend or curve to the right in the road, which then goes over the bridge.  This curve to the right in Church Road and the bridge are north of SNET pole 2542 E2.  (*See also* A-2 Survey Map 1449, Ex. 12, which depicts a curve to the right on Church Road past the New Milford-Sherman town line as well as a brook, "Naromi. Brook" intersecting Church Road; *See also* Affidavit of Cynthia C. Bott, Ex. 11).

Mr. Borkowski further testified that the Town of Sherman plows, sands and salts; patches potholes; and sweeps all of Church Road up to the bridge. (Depo. Tr. Borkowski at 45, 47, 59-60, 66-67).  Mr. Borkowski admitted that although there has been no direct communication with the Town of New Milford, "it's been a standing thing that we [Sherman] plow past the bridge…"  (Depo. Tr. Borkowski at 108)[8].  This testimony contradicts Mr. Borkowski's and Mr. Hackett's affidavits, which place the town line between Sherman and New Milford much further south on Church Road.  (*See* Affidavits of Borkowski, Hackett, Defendant's Motion for Summary Judgment, Exs. F, G).  Mr. Borkowski testified that he took it as his responsibility to plow up to the bridge and to patch and sweep and to do whatever else was needed there.  (Depo Tr. Borkowski at 59-60).  This evidence shows that the Town of Sherman not only maintained the area of the road where Mr. Bernstein fell but also that it maintained Church Road north of where he fell, and even into New Milford.

In his written report, Mr. Serth stated that Sherman was maintaining Church Road to the bridge.  He emphasized that he had "never seen a town spend taxpayer monies to do maintenance on a road that the town is not maintaining."  (Serth report at 3-4, dated July 29, 2003, introduced at his

---

[8] Mr. Borkowski also testified that when plowing here they often went up to Stillson to turn around because there was not enough room at the bridge.  (Depo. Tr. Borkowski at 59).  Stillson Road is a road in New Milford.  (Map of Sherman, Ex. 7 )

deposition as Defendant's Exhibit 1D, Ex. 20).  No municipality would spend its

taxpayers' money, nor should it,[9] unless it had the responsibility for the repair and

maintenance of the area.  But that is exactly what Defendant did; the evidence

shows that it repaired and maintained Church Road beyond the place of the

accident and into what it now claims is New Milford.

Similar to the genuine issue of material fact that existed in *Coughlin,*

concerning the location of where the victim fell and whether the city or the board

had the duty to maintain the property in question, there is a genuine issue of

material fact in the present case as to whether the Town of Sherman was bound

to keep roadway where Mr. Bernstein fell in repair.  *Coughlin*, 61 Conn. App. at

315.   Unlike the situation in *Novicki v. City of New Haven*, 47 Conn. App. 734,

736, 709 A.2d 2, 4 (1997), where summary judgment was granted because the

plaintiff failed to dispute the City's affidavits that it was not the party bound to

repair, the Plaintiffs here have disputed the Defendant's arguments that the

accident did not occur within its borders, and that  it is not the party responsible

for the repairs.

Plaintiffs have produced substantial evidence demonstrating that the

accident occurred in the Town of Sherman:  The ambulance report and Mr.

---

[9] Generally a municipality may not spend public funds for improvements and
construction outside of its boundaries unless authorized by statue or charter.  13
McQuillin, Municipal Corporations §37.11.

Speier's testimony about the location of Mr. Bernstein after his fall place the accident within the Town of Sherman, even if the Defendant's "town line" is found credible by the court.  The Plaintiffs' evidence also disputes the Defendant's "town line," and demonstrates that the town line according to an A-2 survey map reveals that the accident occurred in the Town of Sherman.  Borkowski's and Mr. Hackett's affidavits conflict with Borkowski's deposition testimony that he did not know exactly where the town line was between Sherman and New Milford.  They also conflict with his testimony that he maintains roadways in the area where Mr. Bernstein fell and even beyond into New Milford.

The party bound is not necessarily the party who has ownership of the road, but rather the party who has control of the area, or the duty to maintain it. *Coughlin*, 61 Conn. App at 315; *Agranov*, 1993 Conn. Super. LEXIS 454, at 8-10. "A showing that the plaintiff is not likely to be able to prove the existence of that duty by reliance on the boundary lines … does not establish that he will not be able to do so by other means."  *Pajor v. Town of Wallingford*, No. CV95 0366807, 1996 Conn. Super. LEXIS 702, at *7 (Mar. 18, 1996) (Hodgson, J.), <u>rev'd on other grounds</u>, 47 Conn. App. 365, 704 A.2d 247 (1997).

Plaintiffs have produced substantial evidence demonstrating that the Defendant was the party bound to keep the defective road in repair:  Not only did the accident occur in Sherman, the evidence shows that the Town of Sherman

maintained all of Church Road -- and even into what it now claims is New Milford. The Defendant plowed, swept, patched potholes, and cleaned crosspipes. The evidence shows that the Defendant planned to reconstruct all of Church Road in many of its capital improvement plans.

The evidence of the Plaintiffs and the Defendant, therefore, conflicts regarding where the accident occurred and which party had the duty to repair the area. Therefore, a genuine issue of material fact exists as to which entity had the duty to maintain the section of the roadway in question.

In *Santos v. City of Hartford*, No. 355541, 1991 Conn. Super. LEXIS 1118, at *4 (1991), the evidence presented on a motion for summary judgment was in conflict as to whether the state was maintaining or had the duty to maintain the highway in the area of the fall. The court held that, even though the state's evidence was stronger, "it is not the function of the court to resolve questions of material fact but to determine if such exist." *Id.*; *see also Couglin*, 61 Conn. App. at 615. In this case, it cannot even be said that the Town of Sherman's evidence is stronger.

Questions of fact should be decided by a jury. Since litigants have a constitutional right to have factual issues tried to the jury, the moving party in a summary judgment proceeding is held to a strict standard and is required to make a showing that it is quite clear what the truth is and that excludes any real

doubt as to the existence of any genuine issue of material fact.    *Town Bank and Trust Co. v. Benson*, 176 Conn. 304, 306, 407 A.2d 971 (1978); *Santos*, 1991 Conn. Super. LEXIS 1118, at * 3-4.  The Defendant has not made such a showing in this case.  In the present case, the conflicting evidence as to the location of the accident and whether the Town of Sherman was maintaining or had a duty to maintain the defective road where Mr. Bernstein fell creates a genuine issue of fact.  Therefore, summary judgment should not be granted.

  C. SUMMARY JUDGMENT SHOULD NOT BE GRANTED BECAUSE WHETHER THE ROADWAY WAS DEFECTIVE IS QUESTION OF FACT FOR THE JURY.

  "A defect has been defined to be any object or condition in, upon, or near the traveled path which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result."  *Hickey v. Newtown*, 150 Conn. 514, 518-519, 192 A.2d 199 (1963). The existence of a defect on a road is a question of fact for the jury.  *Id.* at 520-521; *see also Sullivan v. Norwalk*, 28 Conn. App. 449, 453, 612 A.2d 114 (1992).

  Connecticut appellate courts have long held that "a municipality's liability under the statute resembles liability for negligence."  *Sullivan,* 28 Conn. App. at 456-457.  Common law principles of negligence serve as a foundation for determining a breach of a duty under § 13a-149. *Steele v. Stonington*, 225 Conn.

217, 220, 622 A.2d 551 (1993).  The Connecticut Supreme Court has held the differences between them to be "paper thin."  *Id.*  "Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner."  *Michaud v. Gurney*, 168 Conn. 431, 362 A.2d 857 (1975).   The issue of Defendant's breach of its statutory duty and the defective condition of the road that caused Mr. Bernstein's fall are issues of fact best resolved by the jury.

Although the Town of Sherman repaired and maintained Church Road, it did not do it properly.  In the present case, Mr. Bernstein testified that the portion of the road in question was deteriorated, "rutted" with "potholes" and "gravelly." (Depo. Tr. S. Bernstein at 40-41).  John Serth, the engineering expert disclosed by the Plaintiffs, rendered an opinion that the portion of Church Road where Mr. Bernstein fell was defective. (Serth report, Ex. 20)  The defective condition included a stretch of road with a collection of patches and holes.  (*Id.* at 2; Depo. Tr. Serth at 18).

In his report, Mr. Serth described his inspection of the defective condition, in part, as follows:

> When I inspected the accident location there was a pipe running under the road but there was a soil berm between the road and the inlet to the pipe which prevented the water that was running down the hill from entering the pipe.  On the right side of the road there was another soil berm which would prevent water from draining off

of that side of the road.  In this area where maintenance problems
discouraged the drainage of water from the pavement, the
pavement changed from a well maintained surface to a collection
of patches and holes.

(Serth report at 2, Ex. 20)

At his deposition, Mr. Serth testified that it was "fairly obvious there is a

drainage problem out there."  (Depo. Tr. Serth at 81).  He further described the

particular circumstances of the defect, as follows: "Somebody should have been

noticing we are dumping sand out here on a regular basis every winter and we

are not cleaning it up that much in the springtime.  We are building bermes [sic]

on the side of this road.  Something bad is going to happen if we let this continue

for years."  The town dumped sand on the road in question annually during the

winter and did not clean it up enough in the springtime.  As a result, soil berms

built up on the side of the road.  (*Id*.).

Mr. Serth believed that the town workers should have recognized that

"something bad is going to happen if we let this continue for years." (*Id*.).  Mr.

Serth stated that when the road was originally built, a drainage pipe had been

installed; but he believed that the nature of this defect was created by the build

up of the berms.  However, because of the build up of the berms, rainwater could

not reach this pipe, which is not cleaned out on a regular basis anyway.  (*Id*. at

82).  The soil berms must be "consistently removed so that water can drain from the pavement."  (Serth report at 3, Ex. 20).

Mr. Serth testified that the roadway in question had not been properly maintained.  Due to the lack of maintenance, water was able to collect at the side of the road.  (Depo. Tr. Serth at 83-86, 96, 99)[10]  The natural consequence of the condition  where the water is allowed to collect at the side of the road leads to asphalt crumbling and road deterioration.  (*Id.* at 87; see also Serth report at 2-3, Ex. 20).

This deterioration was due to lack of maintenance in the area. The drainage problem had been going on for years.  (Depo. Tr.  Serth at 165-166). Mr. Serth testified that the Town of Sherman knew there were holes in the defective area of the road because they had been patching it.  (*Id.* at 127-128) There was also a "lack of training on the part of the town people" concerning maintenance.  (*Id.* at 87).

Mr. Serth testified extensively about the defective condition of the road where the Plaintiff fell.  As with negligence actions, the existence of a defect in the road is a question of fact best resolved by the jury.  Therefore, summary judgment should not be granted.

---

[10] *See* Photograph taken by Mr. Serth during his investigation on June 13, 2002 when it began to rain.  (Depo. Tr. Serth at 76).  (This photograph was marked at Mr. Borkowski's deposition) (Ex. 19)

D.    A LOSS OF CONSORTIUM CLAIM MAY BE BROUGHT WITH A HIGHWAY DEFECT ACTION, THEREFORE, SUMMARY JUDGMENT SHOULD NOT BE GRANTED.

"A claim for a loss of consortium constitutes a viable cause of action on behalf of the spouse whose marital partner has been injured or killed." *Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 563, 562 A.2d 1100 (1989). "An action for loss of consortium, although independent in form, is derivative of the injured spouse's cause of action…" (internal quotation marks omitted) *Jacoby v. Brinckerhoff*, 250 Conn. 86, 91-92, 735 A.2d 347 (1999). Since Plaintiffs' highway defect claim must survive summary judgment, so should the derivative claim of loss of consortium.

Pursuant to the plain language of General Statutes §13a-149, Mrs. Bernstein's loss of consortium claim is compensable. Only a strained reading of the statute would lead one to believe otherwise. The statute provides that "any person injured in person… by means of a defective road or bridge may recover damages from the party bound to keep it in repair…" Mrs. Bernstein "is 'any person.' Loss of consortium is an 'injury.' *Hopson v. St. Mary's Hospital*, 176 Conn. 485, 493, 408 A.2d 260 (1979). The injury was as a result of the defective [roadway]. Clearly, then, the plaintiff… meets the requirements of the statute, and is authorized under" §13a-149 "to maintain this action for loss of consortium." *Natale v. Burns*, 40 Conn. Supp. 194, 195-96, 485 A.2d 944 (Conn. Super. Ct.

1984, Berdon, J.).  *Accord Tierney v. Burns*, No. 87-0426252, 1990 Conn. Super. LEXIS 395, at *4 (Conn. Super. Ct. May 21, 1990, Aronson, J.)

Additionally, to the extent that the Defendant relies on *Sanzone v. Board of Police Commissioners*, 219 Conn. 179, 199, 592 A.2d 912 (1991), that reliance is improper in the context of a claim pursuant to General Statutes §13a-149.  The *Sanzone* court was considering only C.G.S. §52-557n and made it clear that, despite §52-557n, a plaintiff's remedies for injuries caused by highway defect were to be brought exclusively pursuant to §13a-149.  Although *Sanzone* stated that General Statutes §52-557n, enacted in the Tort I scheme, "eliminated the victim's spouse's right to recover for loss of consortium,"  (*Id.*) the Court was referring to consortium claims derived from a negligence or nuisance action, which could no longer be brought under §13a-149, but not those derived from claims that could and must still be brought under §13a-149.  The statement by the *Sanzone* court at the very least implies that the loss of consortium claim under §13a-149 existed prior to the enactment of §52-557n, otherwise it would be impossible for the legislature to "eliminate" it.

Moreover, the language in *Sanzone*, which notes that §13a-149 does not permit damages for loss of consortium applied only to nuisance or negligence claims (not to §13a-149 claims) and therefore it is dictum.  In making this pronouncement, the Court also relied, in part, on older cases, all of which were

decided before the Connecticut Supreme Court's recognition of loss of consortium in *Hopson v. St. Mary's*, 176 Conn. 485, 408 A.2d 260 (1979). Accordingly, the court should rule in accordance with the plain language of §13a-149.  Mrs. Bernstein, the loss of consortium claimant, was a person injured by the default of the Town of Sherman in violation of General Statutes §13a-149. Her claim is valid; therefore, the Defendant is not entitled to summary judgment on this count.

III.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Plaintiffs respectfully request that the court deny the Defendant's motion for summary judgment.

THE PLAINTIFFS

By_____
    Richard A. Bieder
    Federal Bar ct ct02397
    Koskoff, Koskoff, & Bieder
    350 Fairfield Avenue
    Bridgeport, CT 06604
    Federal Bar # 32250
    Tel: 203-336-4421

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 2nd day of August, 2004, to all counsel and pro se parties of record, as follows:

Thomas R. Gerarde, Esq.
Attorney Beatrice S. Jordan
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut 06114

D. Randall DiBella, Esq.
Cramer & Anderson
51 Main Street
New Milford, Connecticut 06776

David P. Burke, Esq.
Cramer & Anderson LLP
68 North Street
Danbury, Connecticut 06810

John Sterling, Esq.
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

_____
Richard A. Bieder