1

1     UNITED STATES DISTRICT COURT
       DISTRICT OF CONNECTICUT
2

3  STEPHEN BERNSTEIN            :
   AND PHYLLIS BERNSTEIN        : NO.: 3:02 CV 1740(JCH)
4                               :
   V.                           :
5                               :
   TOWN OF SHERMAN              : MARCH 30, 2004
6

7              DEPOSITION OF JOHN SERTH

8  A P P E A R A N C E S:

9       KOSKOFF, KOSKOFF & BIEDER
            Attorneys for the Plaintiff
10          350 Fairfield Avenue
            Bridgeport, Connecticut 06604
11          Telephone:  (203) 336-4421
            Facsimile:  (203) 368-3244
12      BY: RICHARD BIEDER, ESQ.

13      HOWD & LUDOFF
            Attorneys for the Defendant,
14          Town of Sherman
            65 Wethersfield Avenue
15          Hartford, Connecticut 06114
            Telephone:  (860) 249-1361
16          Facsimile:  (860) 249-7665
        BY: THOMAS R. GERARDE, ESQ.
17
   (APPEARANCES CONTINUED)
18

19               REPORTED BY:

20            ROBERT MILLER
         LICENSED SHORTHAND REPORTER
21            LICENSE NO. 10

22         NIZIANKIEWICZ & MILLER
             REPORTING SERVICES
23            972 Tolland Street
        East Hartford, Connecticut 06108
24          Telephone (860) 291-9191

25

            NIZIANKIEWICZ & MILLER REPORTING SERVICE

Exhibit C

87

1  documents that is Plaintiff's Exhibit Eight, the
2  impact on your opinions of this group of documents is
3  to show you what the town was doing; and particularly,
4  that the town was not, at least according to what is
5  written here, cleaning out this drainage area?
6      A   What it shows is a lack of training on the
7  part of the town people, yes.
8      Q   It shows lack of training?
9      A   Nobody is looking at the big picture.
10     Q   Why do you attribute that to training?
11     A   Somebody had the training to understand we
12 need to be out there cleaning up the sand.  We are
13 building dams on the side of the roadway.  I would
14 have expected it to be in here.
15     Q   What you're saying is that this condition
16 where the water is allowed to collect at the side of
17 the road is something that would be naturally
18 productive of the asphalt crumbling and the road
19 deteriorating?
20     A   The natural consequence would be what you
21 are talking about; is that what you are talking about?
22     Q   Yes.
23     A   Yes.
24     Q   Now, these two photographs, Plaintiff's
25 Exhibit Six and Seven from the July 17, '03 deposition

NIZIANKIEWICZ & MILLER REPORTING SERVICE

98

1    THE WITNESS: We talked
2 earlier about going over this with the attorney
3 beforehand. We said we went over, emphasized the
4 parts he thought were important. He physically marked
5 them. The parts I didn't agree with, I didn't let him
6 mark.
7 BY MR. GERARDE:
8    Q  With regard to paragraph A, you didn't have
9 a quarrel with the construction of the road, but a
10 problem with the maintenance of the road?
11    A  Yes.
12    Q  The specific problem with the maintenance
13 of the road, it was not properly maintained so that
14 the drainage was permitted; and because the drainage
15 was not permitted and the water collected on the road,
16 that would lead to a condition of deterioration and
17 crumbling, et cetera?
18         MR. BIEDER: That is all you brought
19         out so far.
20
21 BY MR. GERARDE:
22    Q  Is that fair?
23    A  Yes.
24    Q  I am trying to connect the drainage to the
25 condition of the road.

NIZIANKIEWICZ & MILLER REPORTING SERVICE

1  BY MR. GERARDE:

2     Q   Do you have an opinion --

3            MR. BIEDER:  So you are not misled,

4     he is going to testify as he

5     testified here at the time of trial.

6     And he is going to give the opinions

7     he gave to you at the time of trial,

8     so you don't claim you are surprised

9     about it.

10 BY MR. GERARDE:

11    Q   Are you going to say you are going to

12 testify at trial Mr. Bernstein's conduct had no role

13 in this accident?

14           MR. BIEDER:  That he was not a

15    substantial factor in causing the

16    accident.

17           THE WITNESS:  If I am asked

18 that question, yes.

19 BY MR. GERARDE:

20    Q   What would that be based on?

21    A   The road out there, discussion of all the

22 different people.  The fact, even the man riding just

23 behind him is saying he's slowing down for this area

24 once he sees it.  He said, "I applied the brakes

25 because I see this area."  He didn't have the warning.

1          What he was doing on the road up until that
2  point was fine. He didn't have the warning there was
3  a sudden change.
4      Q  Do you consider yourself an expert in
5  bicycle operation?
6      A  Not really more than the highway part. I
7  could explain some things from an engineering
8  standpoint, but I'm not a bicycle expert.
9      Q  Do you consider yourself an expert on
10 bicycle safety?
11          MR. BIEDER: It depends on what you
12      mean. So I object to the form of
13      the question. Vis-a-vis the
14      connection with the road is one. I
15      don't know where your question -- I
16      object to the form of the question.
17          THE WITNESS: I have done
18 analysis for the town as far as bicycle paths, stuff
19 like that. As far as operation of bicycles, I don't
20 get into.
21 BY MR. GERARDE:
22     Q  What work have you done for the town with
23 respect to bicycle paths?
24     A  They built some paths in front of my house.
25 I didn't think it was up to standard, so they

1   I haven't seen a consensus.  I am not going to ask you
2   to point to deposition transcripts, because I don't
3   think they are in there, that he hit all four of those
4   things.
5           MR. BIEDER:  Objection.  Consensus
6       isn't allowed to come into evidence.
7           MR. GERARDE:  That is his
8       testimony.
9           MR. BIEDER:  You're taking
10      that word and twisting it and that
11      is what you're doing.
12          THE WITNESS:  My concern is
13  sudden deterioration of the pavement, why it is out
14  there, why there is no economic reason to leave
15  something like that out there.
16          I think, beyond that, I am saying you don't
17  leave rough pavement because it would tend to promote
18  accidents.  I think it is for others to say that the
19  -- we know the bike went down in the area as soon as
20  he hit this pavement.
21          We know he's saying he's braking ahead of
22  time because of this.  Someone is going to have to
23  connect these dots.  I can't say it was this one
24  pothole right there that got the guy.  I would say it
25  is an area that has a maintenance problem.  From an

1  engineering standpoint, here is what caused that area.
2  Here is why it would have been cheaper to take care of
3  that area, to do correct maintenance instead of
4  wasting money on improper maintenance.
5  BY MR. GERARDE:
6      Q   What I am getting at, all experts do this.
7  They make assumptions before they offer opinions
8  because, obviously, you weren't there.
9      What I am trying to define, what is your
10 assumption as to how Mr. Bernstein fell?  In other
11 words, what it was that caused him to fall?
12     A   My assumption is, he hit the area of uneven
13 rough pavement without any prior warning.  And from a
14 engineering standpoint, my big concern is why is that
15 pavement there.
16     Q   And what is that assumption based on?
17         MR. BIEDER:  Which assumptions?
18         MR. GERARDE:  That he hit an
19     area of rough pavement in the area
20     we are talking about.
21         THE WITNESS:  I think between
22 the depositions and me talking to he and his wife.
23 And attorneys talking to him and his wife, they would
24 bring that out in the courtroom.  I would be there to
25 explain why it is better to fix that and not waste