UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN BERNSTEIN, ET AL | : | NO.:  3:02 CV 1740 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF SHERMAN | : | DECEMBER 16, 2005 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFFS' EXPERT, JOHN SERTH

**I.     BACKGROUND**

The plaintiff, Stephen Bernstein, has brought this action for injuries he allegedly sustained as the result of a bicycle accident upon what he claims was a defective roadway in the Town of Sherman.  Specifically, the plaintiff alleges that on April 14, 2002 at approximately 11:30 a.m., he was operating his bicycle in a northerly direction on Church Road, approximately 1.7 miles north of Route 39 in Sherman, Connecticut. The plaintiff further alleges that, at said time and place, his bicycle came into contact with a "defective, broken, uneven roadway surface" causing his bicycle to go out of control and throw him to the ground, causing the injuries sustained.

On July 31, 2003, the plaintiff disclosed John Serth, a Professional Engineer, as an expert who would be testifying at the time of trial. (See Plaintiffs' Disclosure of Expert Witnesses dated July 31, 2003, at pp.6-7; attached as **Exhibit A**.)  Specifically,

the expert disclosure notes that Mr. Serth would offer the following testimony concerning: (1) the defective nature of Church Road; (2) the causes of the defects in the road; (3) the standards for maintaining roads such as Church Road; (4) the failure of the Town of Sherman to properly maintain Church Road; and (5) the manner in which the defective nature of Church Road caused the crash in which the plaintiff was injured. (See id.) In addition, the plaintiffs' expert disclosure notes that Mr. Serth is expected to testify in accordance with his expert report. (See id.; Report of John Serth dated July 29, 2003, attached as **Exhibit B**.)

Mr. Serth was deposed on March 30, 2004, and offered extensive testimony as to his expert opinions as set forth above, as well as his bases for the same. The relevant portions of Mr. Serth's deposition testimony as to his expert opinions and conclusions are more fully set forth below.

## II.  LAW AND ARGUMENT

Rule 702 of the Federal Rules of Evidence sets forth the parameters of the admissibility of expert testimony as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

While the Rule embodies a liberal standard for the admissibility of expert opinions, the proffered testimony or evidence must be both relevant and reliable.  See Nimley v. New York, 414 F.3d 381, 396 (2d Cir. 2005), citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  The threshold inquiry in evaluating the admissibility of expert testimony, however, is whether the witness is qualified as an expert by way of knowledge, skill, experience, training, or education, to render the opinions proffered.  Nimely, 414, F.3d at 396, n.11.

Upon the determination that a witness qualifies as an expert as to a particular matter, the inquiry then focuses on the reliability of the data and/or methodology upon which the opinions are based.  See Nimely, 414 F.3d at 396.  "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the] methodology and the expert's conclusions."  Id.  Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  Id., at 396-97.

The final inquiry to be undertaken by the Court in evaluating the admissibility of expert testimony is whether the expert's testimony as to a particular matter will assist the trier of fact.  Nimely, 414 F.3d at 397.  The Second Circuit has consistently held that:

> expert testimony [which] usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it . . . by definition does not aid the jury in making a decision; rather it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.

Nimely, 414 F.3d at 397 (internal quotations omitted), citing United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991), United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).

**A.  MR. SERTH'S TESTIMONY AND OPINIONS REGARDING THE STANDARD OF CARE APPLICABLE TO THE TOWN OF SHERMAN WITH REGARD TO THE MAINTENANCE OF CHURCH ROAD, AND THE TOWN'S FAILURE TO PROPERLY MAINTAIN THE ROAD, SHOULD BE PRECLUDED**

The instant action is governed by Conn. Gen. Stat. §13a-149, the Highway Defect Statute. A municipality's obligations and liability under the statute arises out of a breach of the duties under the statute rather than general negligence. See McIntosh v. Sullivan, 274 Conn. 262, 269-70, 875 A.2d 459 (2005). The existence and nature of the duty owed by the Town of Sherman is a question of law to be determined by the Court. Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705, 709 (2d Cir 1989). Only after the Court has prescribed the applicable standard of care can the trier of fact then determine whether the Town of Sherman breached that standard and duty. Id.

While experts may offer testimony as to an ultimate issue to be decided by the trier of fact pursuant to Fed. R. Evid. 704, such testimony should not be permitted

4

where it embodies a legal conclusion.  Id.; Fiataruolo v. U.S., 8 F.3d 930, 942 (2d Cir. 1993).  It is generally accepted that,

> the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it . . . .  When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making the decision, but rather attempts to substitute the expert's judgment for the jury's.  When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination.  In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion.

U.S. v. Duncan, 42 F.3d 97, 101 (2d. Cir. 1994) (internal quotations omitted; internal citations omitted).  Moreover, "[t]he problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." Andrews, 882 F.2d at 709.

Pursuant to his expert disclosure, John Serth is expected to testify as to the standards for maintaining Church Road, and the failure of the Town of Sherman to properly maintain the road.  (See Plaintiffs' Disclosure of Expert Witnesses, **Exhibit A**, at p.6.)  Specifically, Mr. Serth is expected to testify that the Town of Sherman failed: (1) to properly resurface the road; (2) to properly maintain the road; (3) to properly patch the road; (4) to ensure that the road properly drained water from its surface; (5) to remove the berm along the sides of the road; (6) to properly clean out debris

from the drainage pipe beneath the road; and (7) to take precautions to warn users of the road concerning its defective condition.  (See id., **Exhibit A**, at p.7.)

In his expert report, Mr. Serth offers his analysis of what he deems as the "limited maintenance" by the Town of Sherman, as well as the existence of a drainage problem which he opines caused the general deterioration of the roadway.  (See Report of John Serth, **Exhibit B**, at pp.2-4.) Mr. Serth's report ultimately concludes that,

> [t]he Town of Sherman was maintaining the road.  The maintenance was inadequate perhaps in part because the Town was not maintaining this section of the road to the same standard as the rest of the road.  This poor maintenance lead to the condition of the road surface that caused the subject accident.

(Report of John Serth, **Exhibit B**, at p.4.)

Finally, at his deposition on March 30, 2004, Mr. Serth testified as to his above opinions regarding the maintenance of Church Road, as well as the failure of the Town of Sherman to properly maintain the same.  For example, Mr. Serth testified that his problem with the maintenance of the road was that the drainage was not permitted, thereby allowing the water to collect on the road which would then lead to a condition of deterioration of the road.  (See Deposition Transcript of John Serth dated March 30, 2004, attached as **Exhibit C**, at p.87, ln. 15-23; p.98, ln. 8-23.)  Moreover, Mr. Serth testified that his:

> concern is sudden deterioration of the pavement, why it is out there, why there is no economic reason to leave something like that out there . . . . I would say it is an area that has a maintenance problem. From an engineering standpoint, here is what caused that area. Here is why it would have been cheaper to take care of that area, to do the correct maintenance instead of wasting money on improper maintenance.

(See Deposition Transcript of John Serth, **Exhibit C**, at pp.149-150.)

Mr. Serth's anticipated testimony and opinions as to the standard for maintaining Church Road, as well as the Town of Sherman's breach of the same improperly sets forth a legal conclusion which usurps the role of the Court and the jury in this matter. As such, his expert testimony and opinions in this regard should be precluded. See Nimely, 414 F.3d at 397; Bilzerian, 926 F.2d at 1294; Duncan, 42 F.3d at 101.

In addition, Mr. Serth's testimony and opinions as to the standard for maintaining Church Road, and the breach thereof by the Town of Sherman, erroneously sets forth the standard to be applied by the jury. Contrary to Mr. Serth's opinions, the underlying causes which may result in the general deterioration of the roadway, namely the drainage problem, is not the standard by which liability attaches under the Highway Defect Statute. On the contrary, the "construction and maintenance of highways is . . . a governmental act, and for the negligence in the performance of that act the municipality is not liable." See Scoville v. West Hartford, 131 Conn. 239, 241, 38 A.2d 681, 682 (1944). Rather, a municipality:

7

> is liable under the statue when a person is injured in person or property 'by means of a defective' condition in the road . . . . It becomes necessary then to draw the line between freedom from liability at common law and the liability imposed by the statute; or, to state the matter another way, to determine how far the statute limits the common-law principle.  We have repeatedly held that liability under the statute arises only when there is notice of a defective condition which is the proximate cause of the injury; and that notice of underlying conditions which, as a result of natural forces, may and do produce that condition does not impose liability.

Scoville, 131 Conn. at 241-42.  Accordingly, a municipality's statutory duty "is to act reasonably in remedying a defect of which [it] has actual or constructive notice . . . [the] obligation does not extend to inspecting streets in order to prevent dangerous conditions, even when it is reasonably likely that such conditions may occur." McIntosh v. Sullivan, 274 Conn. 26, 270, 875 A.2d 459, 466 (2005).

As the foregoing demonstrates, Mr. Serth's testimony and opinions as to the drainage problem on Church Road, its subsequent cause of the deterioration of the roadway, and the proper steps which should have been taken by the Town is not only irrelevant, but an improper statement of the standard to be applied by the jury in determining whether the Town of Sherman breached its statutory duty under Conn. Gen. Stat. §13a-149.  Accordingly, Mr. Serth's testimony as to the standard for maintenance of Church Road, and any breach thereof by the Town of Sherman, should be precluded.

    **B.**     **MR. SERTH'S TESTIMONY AND OPINIONS REGARDING THE CAUSE OF THE PLAINTIFF'S INJURIES, AND WHETHER THE CONDITION OF CHURCH ROAD VERSUS THE PLAINTIFF'S CONDUCT WAS A SUBSTANTIAL FACTOR IN CAUSING THE SAME, SHOULD BE PRECLUDED**

As indicated previously, the threshold inquiry in evaluating the admissibility of expert testimony is whether the witness is qualified as an expert by way of knowledge, skill, experience, training, or education, to render the opinions proffered. Nimely, 414, F.3d at 396, n.11. Whether the expert is "qualified" is initially a question for the Court. Fed. R. Evid. 104(a). There is no presumption that a witness is competent to give an opinion; it is incumbent upon a party offering an expert witness to establish that the witness possesses the necessary learning, knowledge, skill, or practical experience to enable him or her to give expert testimony. The Rule 104(a) inquiry requires the proponent of the expert to show by a preponderance of the evidence that the expert's opinion is admissible. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93, 113 S.Ct. 2786, 2796, n. 10 125 L.Ed.2d 493 (1993), citing Bourjaily v. United States, 43 U.S. 171, 175-76, 107 S.Ct. 2775, 2778-2779, 97 L.Ed.2d 144 (1987).

In Daubert, The Supreme Court established a two-step approach the Court must undertake when faced with a proffer of scientific testimony under Rule 702: (1) whether the expert's testimony is reliable; and (2) whether the testimony assists the trier of fact. Id., at 588-593. The Daubert approach requires the Court to ensure that the "expert knows whereof he speaks." Id., at 590.

9

In the instant matter, Mr. Serth's expert disclosure indicates that he will testify that the conditions of Church Road were the cause of the plaintiff's crash. (See Plaintiffs' Disclosure of Expert Witnesses, **Exhibit A**, at p.7; Report of John Serth, **Exhibit B**, at p.4.) Mr. Serth is going to further testify that the plaintiff's conduct did not play a substantial role in the accident. (See Deposition Transcript of John Serth, **Exhibit C**, at p.144, ln. 11-18.)

Mr. Serth, however, admittedly lacks the knowledge, skill, experience, training or education within which to render the above opinions. Mr. Serth conceded that he is an engineer and not an expert in bicycle operation or safety. (See Deposition Transcript of John Serth, **Exhibit C**, at p.145, ln. 4-20.) Mr. Serth, therefore, is not qualified to testify as to whether the condition of the roadway versus the plaintiff's own conduct was the substantial role in causing the accident.

Even if the Court concludes that Mr. Serth is qualified to render expert opinions as to whether the condition of the roadway versus the plaintiff's own conduct was the substantial cause of the accident, the Court must still make a determination as to the reliability of the data and/or methodology upon which Mr. Serth's opinions are based. See Nimely, 414 F.3d at 396. "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the] methodology and the expert's conclusions." Id. Thus, "when an expert opinion is based on data, a methodology, or

studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." Id., at 396-97.

At his deposition, Mr. Serth testified that his opinion that the condition of the road, and not the plaintiff's own conduct, was the substantial cause of the accident, was based on "the road out there," that the plaintiff stated he applied his brakes, didn't have any warning of the sudden change, and that "what the plaintiff was doing on the road up until that point was fine." (See Deposition Transcript of John Serth, **Exhibit C**, at pp.144-145.)  Mr. Serth further conceded that he *did not know* what specific condition caused the plaintiff to fall, and that a combination of gravel, a rut, a pothole and a bump was present in the area of the incident. (See id., at 147-148.)  Rather, his opinion as to the substantial cause of the accident is based upon his *assumption* that the plaintiff hit an area of uneven rough pavement without any prior warning. (See id., at 150-151.)  By his own testimony, Mr. Serth's opinion as to the substantial cause of the incident is based on assumptions that are simply inadequate to support the conclusions reached.  Accordingly, Daubert and Rule 702 mandate the exclusion of such unreliable opinion testimony.

Finally, Mr. Serth's testimony and opinion as to his assessment of what was the substantial cause of the incident does not assist the trier of fact in its determination of the issues in this matter.  Rather, his testimony in this regard is nothing more than

11

impermissible testimony as to a legal conclusion. As indicated previously, it is generally accepted that,

> the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it . . . . When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making the decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination. In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion.

U.S. v. Duncan, 42 F.3d 97, 101 (2d. Cir. 1994) (internal quotations omitted; internal citations omitted).

The determination of what was the sole proximate cause of the plaintiff's accident, or whether the plaintiff's conduct or the conduct of any third-party contributed to the accident is not scientific or beyond the knowledge of the jury. Mr. Serth's testimony in this regard will not aid the jury in its determination of this issue. Accordingly, such testimony and opinions by Mr. Serth should be precluded.

### C. MR. SERTH'S EXPERT REPORT SHOULD BE PRECLUDED FROM INTRODUCTION INTO EVIDENCE AT TRIAL

As more fully set forth above, Mr. Serth's expert report contains numerous areas of opinion and analysis which should be precluded as they are not properly admissible. Specifically, the testimony and opinions above as set forth in his expert report seek to introduce expert opinions as to which he is not qualified to testify, is

premised upon speculative and unreliable information, seeks to offer impermissible legal conclusions on ultimate issues for the jury, and is not necessary to assist the jury in understanding or determining any fact or issue in this matter. Moreover, its prejudicial value outweighs its probative value in light of the various impressible opinions expressed therein.

Accordingly, for the reasons more fully set forth herein, Mr. Serth's expert report should be precluded from introduction into evidence at the time of trial.

## III. CONCLUSION

For the foregoing reasons, the defendant respectfully requests that its Motion *in Limine* be granted, and an order enter precluding the introduction of Mr. Serth's expert report into evidence at the trial of this matter, and precluding his testimony and opinions as set forth herein.

DEFENDANT,
TOWN OF SHERMAN

By____/s/ Beatrice S. Jordan_____
Beatrice S. Jordan
ct22001
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (Fax)
E-Mail: bjordan@hl-law.com

13

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 16th day of December, 2005.

Richard Bieder, Esquire
Cynthia C. Bott, Esquire
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT  06604

D. Randall DiBella
Cramer & Anderson, LLP
51 Main Street
New Milford, CT  06776

David P. Burke, Esquire
Cramer & Anderson, LLP
68 North Street
Danbury, CT  06810-5645

James M. Sconzo, Esquire
John Sterling, Esquire
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Jesse J. Graham II, Esquire
Rivkin Radler LLP
926 EAB Plaza
Uniondale, New York 11556-0926

                                                  /s/ Beatrice S. Jordan
                                                  Beatrice S. Jordan