UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN BERNSTEIN and PHYLLIS BERNSTEIN ) | CIVIL ACTION NO. |
| ) | 3:02 CV 1740 (WIG) |
| VS. ) | |
| ) | |
| TOWN OF SHERMAN ) | June 20, 2006 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION *IN LIMINE* RE
<u>SURVEY MAP # 1449</u>**

The defendant Town of Sherman moved *in limine* to preclude the plaintiffs from introducing at trial a certain survey, "Survey Map #1449" ("Survey Map"), depicting, among other physical features, the approximate town line between the Towns of Sherman and New Milford in the area of the defective road which caused the injury to plaintiff Stephen Bernstein.

The basis of the motion *in limine* is that the Survey Map is inadmissible hearsay and none of the exceptions to the hearsay rule applies. It is undisputed that the Survey Map was prepared in February 1990 for a Richard McGoldrick by a licensed surveyor (Richard W. Dibble) from a bona fide land surveyor company, K.W. Rogers, Associates.[1] The survey map indicates it was

---

[1] Plaintiffs expect to be able to establish at an evidentiary hearing that K.W. Rogers Associates was sold by Mr. Dibble to CJOJ, LLC (Land Surveying and Engineering) operated by Mr. C.J. Osborne, Jr (President) sometime after 2000. Thereafter, Mr. Dibble worked part time for Mr. Osborne until shortly before his death in 2005. CJOJ, LLC retains the files of K.W. Rogers Associates. Defendant does not dispute that K.W. Rogers was a reputable and licensed surveying company at the time Survey Map #1449 was prepared in 1990. There should be no issue as to

filed and recorded on March 9, 1990, at the Town of Sherman's clerk's office and designated as File # 1449. See Exhibit A to Defendant's Motion in Limine re Survey Map #1449. A quick perusal of the map reveals that the town line depicted was, in the surveyor's opinion, an approximation. Because the Survey Map was reportedly prepared with regard to construction of a barn for Richard McGoldrick and not to "definitively establish" the town line, the defendant claims that it is inherently unreliable. (Defendant's Motion, p. 3)

The Survey Map is admissible under at least three exceptions to the hearsay rule: as a record of a regularly conducted business activity, as a governmental record, or under the residual catch-all exception under Fed. R. Evid 807. Furthermore, the Survey Map is not inherently unreliable so as to render it irrelevant. Given the issues as to the location where the plaintiff fell and the towns' dividing line (both issues to be determined by the jury, at least unless the Town of Sherman took upon itself the duty to maintain the road in both towns)[2] the jury has a right to take into account a professional surveyor's opinion, even if an approximation. The substance of the

---

authentication of the Survey Map as a genuine survey map. See Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 927-29 (3d Cir. 1986) ("[T]he burden of proof for authentication is slight. All that is required is a foundation from which the fact finder could legitimately infer that the evidence is what the proponent claims it to be."); Fed. R. Evid. 901 et seq.

[2] The location of the boundary line on Church Road between the Towns of Sherman and New Milford is a fact which may be relevant to the issue of which town was under a duty to maintain it. If the location of plaintiff's fall is determined to be on a street that the Town of Sherman had a duty to maintain, either because it was in Sherman or because Sherman agreed with New Milford to maintain it, pPlaintiff can proceed under General Statutes §13a-149. "Ownership of the property does not establish liability under § 13a-149 . . . Rather, it is . . . the 'party bound to keep [the property] in repair' . . . on which the [statute] imposes liability under certain circumstances." Coughlin v. City of Waterbury, 61 Conn. App. 310, 314 (2001).

Survey Map's portrayal of the town line goes to its weight, not to its admissibility, which weight is to be judged by the trier of fact.

1.   **The Survey Map is Admissible as a Record of a Regularly Conducted Business Activity Under Rule 803(6) of the Fed.R.Evid.**

Rule 803 states, in pertinent part, that:

> [a] memorandum, report, record, or data compilation, in any form, of acts [or] events . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).

In the Second Circuit, "[b]usiness records may be admitted notwithstanding the unavailability of the record's author, so long as a custodian or other qualified witness testifies that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record." Parker v. Reda, 327 F.3d 211, 214-15 (2d Cir. 2003). "The phrase "other qualified witness" [in Rule 803(6)] should be given the broadest interpretation; the witness need not be an employee of the entity so long as the witness understands the system. Thus, for example, a certified public accountant could testify after examining books and records." 5 J. Weinstein & M. Berger, Weinstein's Federal Evidence §803.11[1] (3d ed. 1999).

Plaintiffs expect to be able to establish at trial, or at an evidentiary hearing, that the Survey Map was made and kept in the regular course of Dibble's business and that Osborne is the custodian of the Survey Map. It is of no moment that Osborne did not create the record:

> Rule 803(6) does not require that the records be prepared by the business which has custody of them. Where circumstances indicate that the records are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation. Testimony by the custodian of the record or other qualified witness that the record is authentic and was made and kept in the regular course of business will suffice to support its admission.

United States v. Veytia-Bravo, 603 F.2d 1187, 1191-92 (5th Cir.1979), cert. denied, 444 U.S. 1024 (1980). See also United States v. Jakobetz, 955 F.2d 786, 800-01 (2d Cir.), cert. denied, 506 U.S. 834 (1992); United States v. Consolidated Edison Co., 580 F.2d 1122, 1131 n. 18 (2d. Cir. 1978) ("no basis for limited [Fed.R.Evid. 803(6)]'s operation to introduction of one's own business records," records of independent contractor who operated proponent's facilities admitted); United States v. Dixon, 132 F.3d 192, 197 (5th Cir. 1997), cert. denied, 523 U.S. 1098 (1998) (corporation's business records were admissible in drug prosecution even though custodian did not personally create records and did not personally know whether they were true and accurate, because they came within the definition of business records under Fed. R. Evid. 803); United States v. Keplinger, 776 F.2d 678, 693-94 (7th Cir. 1985), cert.denied, 476 U.S. 1183 (1986) (business records exception does not require "qualified witness" personally to participate in creation or maintenance of documents or even know who recorded data); United States v. Childs, 5 F.3d 1328, 1332-34 (9th Cir. 1993), cert. denied, 511 U.S. 1011 (1994)

(testimony by custodian not required, witness is required only to be familiar with record-keeping of the business); United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (invoice properly admitted although previously a record of another company).

Moreover, Osborne need not have been working with Dibble at the time the Survey Map was made to be a proper witness to testify about the business record. United States v. Peters, 791 F.2d 1270, 1292-93 (7th Cir.) (records admitted although creator of records was in coma), cert. denied, 479 U.S. 847 (1986). Accord United States v. Smith, 609 F.2d 1294, 1301-02 (9th Cir. 1979).

There should be no question as to the reliability of the information contained in the business record, because if the Court[3] finds the supplier of the information was acting in the regular course of business, there is an assurance of accuracy. See Advisory Committee Note to Fed. R. Evid. 803 (if the supplier of the information does not act in the regular course [of business under a "duty of accuracy"], an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail"); United States v. Reyes, 157 F.3d 949, 952 (2d Cir. 1998) (records custodian

---

[3] Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., 505 F. Supp. 1190, 1230 (E.D. Pa. 1980) ("The determination of business record status, in particular, is one which, before the Rules, was always for the court to make …this determination is still for the Court to make."); United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("It is within the trial court's discretion to determine whether a proper foundation was laid for application of the business records exception to a particular document and whether the circumstances of the document's preparation indicate trustworthiness.")

could establish foundation for prison logbook, even without personal knowledge of whether lobby officer checked each entry in log book against identification offered because she knew sign-in procedures).

This is especially true here where the Survey Map was prepared for filing at the Town of Sherman pursuant to local zoning regulations and the document would be used by government authorities to decide whether to grant a permit. See Exhibit A (relevant portions of Town of Sherman Zoning Requirements, pp. 46-47, § 411) (mandating survey map to accompany zoning permit request)).  See also United States v. Central Gulf Lines, Inc., 575 F. Supp. 1430, 1433 (E.D. La. 1983) (business records prepared by contractor pursuant to a statute deemed to be a business record, and "Rule 803(6) does not require that the records be prepared by the business which has custody of them"). Furthermore, the custodian or other qualified witness need not testify in person, if the requirements for admissibility under the 803(6) exception can be met with other evidence.  See United States v. Kail, 804 F.2d 441, 449 (8th Cir. 1986) ("Foundation under Rule 803(6) may . . . be established by circumstantial evidence, or by a combination of direct and circumstantial evidence."); In re Japanese Elec. Products Antitrust Litig., 723 F.2d 238, 287-88 (3d Cir. 1983) (agreeing with lower court that "testimony of the custodian or other qualified witness is not a sine qua non of admissibility in the occasional case where the requirements for qualification as a business record can be met by documentary evidence, affidavits, or admissions of the parties, i.e. by circumstantial evidence, or by a combination of direct and circumstantial evidence."), rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574 (1986).  See also  United States v. Sachs, 801 F.2d 839, 843 (6th Cir. 1986) (witness' lack of personal knowledge goes to weight to be accorded testimony, not to its admissibility).

The Survey Map, designated File #1449 by the Town of Sherman, is admissible at trial as a record of a regularly conducted business activity.

**2.      The Survey Map is Admissible as a  Governmental Record under Rule 803(8) of the Fed.R.Evid.**

Rule 803(8), Public Records and Reports, provides, in relevant part, that the following are not excluded by the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty a imposed by law as to which matters there was a duty to report…

Public records are admissible without foundation testimony:

> Since the assurances of accuracy are usually greater for public records than for regular business records…Generally, the record itself can be admitted as proof of the facts to which it relates without foundation testimony, and it will be self-authenticating if it meets the requirements of Rule 902(4)."[4]

5 J. Weinstein & M. Berger, Weinstein's Federal Evidence §803.13[1] (3d ed. 1999).

---

[4]    Rule 902(4) provides: "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to…:: *Certified Copies of Public Records*. A copy of an official records or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilation in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule…

Here, the Survey Map in question exists as Sherman Town filing #1449. It is admissible as a public record under either 803(8)(A) or 803(8)(B). Survey Map is admissible as a 803(8)(A) record setting forth an activity of Sherman's zoning and planning board, inasmuch as it was a document collected in the regular business of the board as it entertained residents' requests for zoning permits related to land located within Sherman's borders. See In re Oil Spill by The Amoco Cadiz, 954 F.2d 1279, 1309 (7th Cir. 1992) (" documents generated or collected by the national government in the course of its public functions… are admissible under Rule 803(8).")(emphasis added)).

Furthermore, the Survey Map could be construed as a record of matters observed pursuant to duty a imposed by law as to which matters there was a duty to report under Rule 803(8)(B) because the filing was made pursuant to a Sherman zoning board regulation and it was a necessary filing upon which Sherman's Zoning and Planning board would rely when making its decision on the permit request of Mr. McGoldrick. (See Exhibit A, pp. 46-47, §411 et seq.). The Survey Map is not disqualified as a Town of Sherman governmental record, admissible under Rule 803(8), because the Survey Map was not created by a public official. "Rule 803(8)(B) can encompass statements of non-governmental parties who act as agents for the government under duties imposed by law. See, e.g., United States v. Meyer, 113 F.2d 387, 397-98 (7th Cir. 1940) (map prepared by engineer for the government from information furnished by persons under his supervision admissible as a government record) (cited by Advisory Committee Note to Rule 803)." United States v. Doyle, 130 F.3d 523, 547 (2nd Cir. 1997). See

also <u>Holt v. United States</u>, 218 U.S. 245, 242 (1910) ("witness [whose map work is in the document under consideration as a government record] relied in part upon the correctness of official maps in the Engineers' Department made from original surveys under the authority of the War Department, but not within his personal knowledge, and he referred to a book showing the titles to Fort Worden compiled under the same authority. The documents referred to are not before us, but they properly were introduced"); <u>United States v. Central Gulf Lines, Inc</u>., 747 F.2d 315, 319 (5th Cir. 1984) ("Rule 803(8) does not require a public official to make the record.").

The weight and credibility extended to government reports admitted as exceptions to the hearsay rule are to be determined by the trier of fact. See <u>Rosario v. Amalgamated Ladies Garment Cutters' Union</u>, 605 F.2d 1228, 1251 (2d Cir. 1979), <u>cert</u>. <u>denied</u>, 446 U.S. 919 (1980). The Survey Map carries with it inherent indicia of reliability because it was created years before the plaintiff was injured, and the surveyor had no reason to falsify the town line for any purpose and, indeed, had reason to be suitably accurate, since it was to be filed at Sherman town hall pursuant to local zoning board regulations. See <u>United States v. Central Gulf Lines, Inc</u>., 747 F.2d 315, 319 (5th Cir. 1984) ( "…the third element of Rule 803(8), indicia of trustworthiness, is also met in this action. Central Gulf has not provided any evidence or reason to believe that the documents are not trustworthy. To the contrary, the documents are originals and <u>Boda had nothing to gain, and its reputation as a surveyor to lose, by falsifying the documents</u>.") (emphasis added)). The Survey Map is admissible under Fed.R.Evid. 803(8).

3.  **Survey Map #1449 is Admissible Under Fed. R. Evid. 807 (formerly 803(24) and 804(b)(5))**

Rule 807 of the Federal Rules of Evidence, states that:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

"Fed. R. Evid. 807 is the residual exception to the rule against hearsay. To be admissible under Rule 807, the evidence must be (1) trustworthy, (2) material, (3) more probative than other available evidence, and must fulfill (4) the interests of justice and (5) notice. See United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993) (interpreting prior residual exception under Rule 803(24))." Silverstein v. Chase, 260 F.3d 142, 149 (2d Cir. 2001).

"These five indicia of reliability are to be examined to see whether the four classes of risk peculiar to hearsay evidence, which are insincerity, faulty perception, faulty memory and faulty narration, are minimized. Steinberg v. Obstetrics-Gynecological & Infertility Group, 260 F. Supp. 2d 492, 495 (D. Conn. 2003) (citing Schering Corp. v. Pfizer Inc., 189 F.3d 218, 232 (2d Cir. 1999)). "Hearsay statements, however, "need not be free from all four categories of risk to be admitted under Rule 807." Schering Corp., 189 F.3d at 233. In other words, to allow [a

document] into evidence under Rule 807, the Court must evaluate whether the statements … possess a reliability commensurate with that found in other statements that are admitted under exceptions to the hearsay rule." <u>Steinberg</u>, 260 F. Supp. at 495-96.

In <u>Steinberg</u>, the plaintiff doctor contested the amount of benefits she was entitled to after leaving the medical group where she worked. Opposing a motion for summary judgment, plaintiff asserted that she had exhausted the available administrative remedies, or alternatively, that it would have been futile to proceed further with such remedies. As a supporting document, she included a letter from her prior attorney who had negotiated with the defendant group regarding her claim to benefits, written to her litigation counsel. The prior attorney was unavailable to testify in person or submit an affidavit because she had died. The court found the letter was hearsay, but was admissible under the residual exception of Fed. R. Civ. P. 807.  In the same way, the Survey Map here is reliable and admissible.

    a.    **Trustworthiness**

The <u>Steinberg</u> letter was found to be trustworthy, less an "advocacy piece" than an

> explanatory piece…[plaintiff] was providing merely a description of the case, accompanied by her conclusions and impressions based on the relevant facts, for another attorney who was preparing to represent the plaintiff in the matter. In fact, it was necessary for her to communicate this information to attorney Ciulla if she was to accurately describe the case to him so that he could adequately represent the plaintiff; this seems to mitigate the risks of insincerity, faulty memory and faulty narration.

<u>Steinberg</u>, 260 F. Supp. 2d at 496. <u>See</u>  <u>In re Columbia Securities Litigation,</u> 155 F.R.D. 466, 475 (S.D.N.Y. 1994) (court has broad discretion in assessing trustworthiness of hearsay evidence).

Similarly, the Survey Map is trustworthy, in that it was prepared years before this case arose, and was filed pursuant to Sherman Town regulations in order to accurately depict the land at issue so the Town Zoning Board could act on the resident's permit request.

### b.      Materiality

Similarly, the Steinberg court found the letter to be material, as the question of futility in pursuing administrative remedies could become "the primary issue" in the Steinberg case. Id. Here, the Survey Map contains at least one professional surveyor's approximation of the town line between Sherman and New Milford, and as the location of the town line is an issue in this case the Survey Map is material.

### c.      More Probative than Other Available Evidence

The Steinberg court also found that the letter satisfied the probative importance requirement:

> [t]hough the Letter is not the only evidence suggesting that the plaintiff's availment to the administrative process set forth in the Plan would have been futile, it is clearly the strongest and most probative on the matter; it was attorney Schwartz's responsibility to discuss the contested issues with Plan Administrators and, as the plaintiff's representative, she was in the best position to most accurately describe the plaintiff's position at that time.

Id. at 497.   Here, plaintiffs have consistently offered the Survey Map as its strongest evidence in support of its allegation that the plaintiff's injury occurred in Sherman.   In re Columbia Securities Litigation, supra, 155 F.R.D. at 475 (stating trial court has broad discretion in assessing probative importance of hearsay evidence).

### d. The Interests of Justice and Notice are Satisfied

Finally, in <u>Steinberg</u> court found both that admitting the letter under Rule 807 fulfilled the interests of justice and that the defendant's had adequate notice of plaintiff's intended use of the letter. <u>Steinberg</u>, 260 F. Supp. 2d at 475 (<u>citing</u> <u>National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.</u>, 213 F. Supp. 2d 331, 343 (S.D.N.Y. 2002) (interests of justice would not be served if evidence excluded in light of its satisfaction of indicia of reliability requirements); <u>Robinson v. Shapiro</u>, 646 F.2d 734, 743 (2d Cir. 1981) (interests of justice requirement commended to the sound discretion of the trial judge). Likewise, here the Survey Map should be admitted in the interests of justice and because defendant has had adequate notice of plaintiffs' intended reliance on Survey Map. Given its trustworthiness, materiality and indicia of reliability due to its creation 1) predating the injury which underlies this action by a decade and 2) by an unbiased professional surveyor for a governmental authority to rely upon, there is no reason why, in justice, the Survey Map should not be admitted.

Furthermore, Defendant does not contest and certainly has had prior knowledge and reason to know that Plaintiffs have relied upon (for example, the Survey Map was marked as an exhibit in depositions and used to oppose summary judgment), and intend to use the Survey Map at trial; the defendant's instant motion *in limine* manifestly attests to defendant's knowledge and notice.

For all the above reasons, the Survey Map is admissible under Fed. R. Evid.807.

### III.  **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Plaintiffs respectfully request that the Court deny the Defendant's motion *in limine* concerning Survey Map #1449, and deem it admissible at trial.

                                                          THE PLAINTIFFS

                                         By  _____
                                              William M. Bloss
                                              Lillian C. Gustilo
                                              Federal Bar No. ct01008
                                              Koskoff Koskoff & Bieder
                                              350 Fairfield Avenue
                                              Bridgeport, Connecticut 06604
                                              Tel:  203-336-4421
                                              FAX:  203-368-3244
                                              Email: bbloss@koskoff.com

**CERTIFICATION**

      This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 20th day of June, 2006, to all counsel and pro se parties of record, as follows:

Thomas R. Gerarde, Esq.
Attorney Beatrice S. Jordan
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut 06114

John Sterling, Esq.
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Jesse J. Graham, II, Esq.
Rivkin Radler LLP
EAB Plaza
Uniondale, N.Y. 11556-0926

                                                                _____
                                                                William M. Bloss