**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

| | |
|---|---|
| | ) |
| **STEPHEN BERNSTEIN and PHYLLIS** | ) |
| **BERNSTEIN** | )    **CIVIL ACTION NO.** |
| | )    **3:02 CV 1740 (WIG)** |
| **VS.** | ) |
| | ) |
| **TOWN OF SHERMAN** | )    **June 20, 2006** |

_____)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**MOTION _IN LIMINE_ TO PRECLUDE TESTIMONY AND**
**REPORT OF PLAINTIFF'S EXPERT JOHN SERTH**

**I.    Introduction**

Defendant Town of Sherman moved _in limine_ to preclude _any and all_ testimony,

opinions and the report of John Serth, plaintiffs' civil engineer expert, from being introduced at

trial.  Plaintiffs oppose the motion because Serth's testimony and opinions (and report) are the

testimony and opinions of an expert which are reliable, relevant and will assist the jury.  In

addition, any opinions offered by Serth will not usurp the functions of the court or the jury as

claimed by defendant.  If some of Serth's expert opinions embrace ultimate issues to be decided

by the jury, those opinions are routinely offered and found admissible per Fed. R. Evid. 704,

with the properly instructed jury deciding the weight to be credited the opinions and testimony.

Furthermore, if the court finds certain of Serth's opinions impermissibly invade the province of

the court or the jury, Serth must be allowed to otherwise testify and opine about all matters that

are within his expertise and that will assist the jury.

Defendant's Memorandum of Law in support of its motion only objects *in particular* to Serth's anticipated testimony regarding "the standard of maintaining" Church Road, and the Town's "breach" of that standard; [Memorandum of Law, Part A, pp. 4-8]; and the cause of plaintiff's injuries and whether plaintiff's conduct played a substantial role in causing plaintiff's injuries [Part B, pp. 9-11]. While defendant makes a passing argument [Part C, p.11-13] that the *entirety* of Serth's report should be precluded because it contains "numerous areas of opinion and analysis … which are not properly admissible," based upon a variety of conclusory objections,[1] defendant fails, first, to specify which particular "opinions" and "analysis" in the Report are objectionable, and second, to specify which particular objections cited render the unidentified opinions or analyses inadmissible. As this part of defendant's memorandum fails to elucidate and specify exactly what is objectionable in Serth's report, and why such opinions and testimony are inadmissible, defendant has failed to move to preclude anything contained in Serth's Report which does not overlap with any opinions or testimony *particularly objected to* by defendant in the first two parts of its memorandum.

---

[1] Defendant alleges Serth's "testimony" and "opinions" in the Report:  1) are inadequate because Serth is not qualified to testify to them; 2) are premised on unreliable information; 3) are premised on speculative information; 4) are inadmissible legal conclusions; and 5) are not "necessary" to assist the jury in understanding or determining any fact in issue" (an erroneous statement of the requirements of Fed. R. Evid. 702 -- which requires only that the testimony "assist" the trier, i.e. be relevant to the issues to be determined by the jury-- not that it be "necessary" for the jury to make its determinations), and (6) are inadmissible because the prejudicial value outweighs the probative value." (Defendant's  Memorandum in Support of its Motion in Limine, pp. 12-13).

## II.     Background

Plaintiffs' claims are based upon the breach of Connecticut's Highway Defect Statute, Conn. Gen. Stat. §13a-149.  Section 13a-149 provides in pertinent part: "any person injured in person or property by means of a *defective road* or bridge may recover damage from the party bound to keep it in repair." (emphasis added).  A cause of action under §13a-149 is a statutory claim and not a negligence claim. Prato v. New Haven, 246 Conn. 638, 645 (1998).  To prove a violation of § 13a-149 the plaintiff must prove, by a fair preponderance of the evidence that:

(1)     the highway was defective as claimed;

(2)     that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of the defect;

(3)     that the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under the all the circumstances to do so; and

(4)     that the defect must have been the sole proximate cause of the injuries and damages claims, which means that the plaintiff must prove freedom from contributory negligence.

Lukas v. New Haven, 184 Conn. 205, 207 (1981).

A  "highway defect is 'any object in, upon or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result.'" Sanzone v. Bd. of Police Commissioners, 219 Conn 179, 202 (1991) (quoting Hewison v. New Haven, 35 Conn. 136, 142 (1867)); see also Congdon v. Norwich, 37 Conn. 414, 419-420 (1870).  A

municipality "has a duty to inspect its streets and discover defects as they occur."  <u>Prato</u>, 246

Conn. at 644.  Whether the duty to make a "reasonable inspection" is violated "depends on the

[1] *nature of the defect* and [2] *the length of time it existed*."  <u>Id</u>. at 645 (quoting <u>Hall v. Burns</u>,

213 Conn. 446, 480 (1990) (emphasis added)).   "Thus, the circumstances of each case must be

examined." <u>Prato</u>, 246 Conn. at 646.  The existence of a defect on a road is question of fact for

the jury.  <u>Hickey v. Newtown</u>, 150 Conn. 514, 520-21, 192 A.2d 199 (1963); <u>Sullivan v.

Norwalk</u>, 28 Conn. App. 449, 453, 612 A.2d 114 (1992).

**III.    Serth's Testimony and Opinions Are Admissible Because They Do Not Usurp the
        Functions of the Court or the Jury**

         Defendant first argues that several of Serth's opinions (as set forth in his expert

disclosure, report and deposition testimony) are legal or factual conclusions that usurp the roles

of the court and trier of fact. (Defendant's Memorandum of Law, p. 7).  On that basis,

Defendant argues that the following particular opinions of Serth are inadmissible:

         that the Town of Sherman:

         (1)     failed to properly resurface the road

         (2)     failed to properly maintain the road

         (3)     failed to properly patch the road

         (4)     failed to ensure that the road properly drained water from its surface

         (5)     failed to remove the berm along the side of the road

         (6)     failed to properly clean out debris from the drainage pipe beneath the road

4

       (7)     failed to take precautions to warn users of the road concerning its defective
              condition.

(Defendant's memorandum of law, pp. 5-7).

Under Fed. R. Evid. 702, an expert's testimony must relate to specialized knowledge that will "assist" the jury, or, in other words, be relevant to the issues to be determined by the trier of fact including helping a jury merely to understand the evidence.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993)( Under Rule 702, the evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue.  This condition goes primarily to relevance.").  Rule 702 allows expert witness to testify "in the form of an opinion or otherwise."  "Thus, while experts may testify as to an opinion, they may also give test results, describe recognized principles of their specialized knowledge, provide general background, or simply explain the evidence." Wright & Gold, Federal Practice and Procedure: Evidence §6263, at 197.

**A.    Serth's Opinions and Testimony Do Not Impermissibly Invade the Province of the Court or the Jury**

Serth's opinions do not usurp the role of the judge to tell the jury the law to apply, nor do they tell the jury how to apply the law to the facts before it.  As noted above, the court will tell the jury that plaintiffs can prevail with their § 13a-149 claim if plaintiffs prove by a preponderance of the evidence that the four Lukas elements are met (1) the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of the defect; (3) that

the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under the all the circumstances to do so; and 4) that the defect was the sole proximate cause of the injuries.  Lukas, 184 Conn. at 207.

Serth's testimony and opinions (as set forth in his report and deposition) do not usurp the function of the court by telling the jury the legal standard.  He has not opined, for example, that the jury may find in favor of the plaintiffs if the plaintiffs prove that the road was "defective," or that the plaintiffs should prevail by any other standard.[2]  Serth's opinions and testimony contained in his *report* and *deposition* noticeably do <u>not</u> utilize or adopt the statutory term "defective," or even use the word "defective" in any context.

Rather, Serth will inform the jury that, in his expert opinion,[3] the road was deteriorated

---

[2] Admittedly, Plaintiffs' *expert disclosure* for Serth uses the word "defective," indicating that he will testify that the road is "defective," the causes of the "defects" and that the "defective nature" of the road caused Mr. Bernstein to be injured. (Plaintiffs' Expert Disclosure (dated Dec. 16, 2005, p. 6).)  However the expert disclosure will not be presented to the jury and is irrelevant, in light of Serth's disclosed report, as well as the fact that defendant took a lengthy deposition of Serth in 2004.

[3] Notably, defendant does not seriously contest that. Serth will be unable to be qualified as an expert witness, i.e. that Serth is at least a potential source of reliable specialized knowledge whose knowledge will assist the jury. <u>See</u>  Curriculum Vitae of John Serth (Exhibit 1, attached hereto)**;** <u>see also</u> Serth's Report (Exhibit B to Defendant's Memorandum of Law in Support of Motion *In Limine* to Preclude Serth)
("My masters thesis involved studying anti-stripping compounds in cold mix asphalt concrete. Basically this involved taking the patch material used on pavement in winter and soaking it in water, subjecting it to freeze-thaw cycles and watching it loose [sic] its' [sic] strength.   This is what happens to pavement that does not drain and would be part of the reason the pavement was in such poor condition at the accident location.  If the base under the pavement gets wet it also loses its' [sic] strength.  When the base deforms it opens up cracks in the pavement

and gravelly due to maintenance problems (including a patching issue, a drainage issue, and so on as described), and this was caused by the Town of Sherman. All of these opinions, as well as Serth's enlightening background testimony about road maintenance, will assist the jury in deciding whether the road was actionably "defective," as instructed by the court, under § 13a-149. See Sanzone, 219 Conn. at 202 ("A highway defect is any object in, upon or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result.").

Evidence of a maintenance problem (caused by any number of things, such as an underlying drainage problem,[4] or, for example, inadequate repairs or patching[5]) could lead a jury to conclude that the resultant deteriorated roadway was defective under § 13a-149 (see

allowing more water into the system, making the problem worse. If the drainage problems are not corrected, the pavement will need constant repair to be maintained.").

[4] See Renzullo v. Town of Litchfield, 2005 Conn. Super. LEXIS 2048 (Aug. 10, 2005)(Trombly, J.) (alleged §13a-149 defect was dangerous road caused by beaver dam adjacent to roadway which caused roadway to flood, which then froze and became icy and which plaintiff alleged town knew or should have known had water and ice on it and took no action to dismantle beaver dam or install a drain; court denied defendant's motion for summary judgment finding that defective condition due to water on road caused by beaver dam inevitably would become dangerous icy roadway once temperature reached 32 degrees).

[5] See Bacon v. Rocky Hill, 126 Conn. 402, 410 (1940) ("Nor is it too much for the law to demand that a municipality, when it undertakes to repair a highway, should do so in such a manner as not to produce a condition the natural tendency of which is to create danger and inflict injury upon travelers, under penalty of being held responsible in damages should it fail to do so.") (emphasis added)).

Defendant's Memorandum of Law, p. 7), providing, of course, that the other <u>Lukas</u> elements

are met, including that defendant had the requisite actual or constructive notice of same.  From

venerable cases, through modern times, it has been permissible for a jury to find that a

roadway, through improper maintenance, is "defective," which condition the municipality

should have been aware of from its duty to inspect its streets and to discover defects as they

occur. <u>See</u> <u>Prato</u>, 246 Conn. at 644-45 (whether duty to make a "reasonable inspection" is

violated "*depends on the nature of the defect and the length of time it existed*") (emphasis

added)).  <u>See also</u> <u>Linn v. Hartford</u>, 135 Conn. 469, 471-72 (1949) (pavement condition

causing plaintiff's fall developed over a year was sustained as being actionable under highway

defect statute; "[i]n view of the character of the pavement in question, the finding that the

condition had developed gradually over a period of a year or more was sufficient to sustain the

conclusion that the defendant had constructive notice"); <u>Tirendi v. Waterbury</u>, 128 Conn. 464,

468 (1942) ("The general rule is that to charge a defendant with constructive notice it is

incumbent on the plaintiff to establish that the defect had been there a sufficient length of time

and was of such a dangerous character that the defendant by the exercise of reasonable care

could and should have discovered and remedied it."); <u>Lucy v. Norwich</u>, 93 Conn. 545, 548

(1919) ("The fall…was the proximate result of the negligence of the city in failing to remove or

remedy the defective condition through the accumulation of ice and snow on the sidewalk

…and after the same had existed in said defective condition for a sufficient length of time to

impute knowledge and notice of the defect to the city of Norwich."); <u>Congdon v. Norwich</u>, 37

Conn. 414, 419-20 (1870).

Serth's opinions also do not advise the jury on the applicable law because his testimony

does not impermissibly utilize an "inadequately explored legal criteria." The Advisory

Committee's Note to Rule 704 provides:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact… They also
> stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.
> Thus the question, "Did T have capacity to make a will?" would be excluded, while the
> question, "Did T have sufficient mental capacity to know the nature and extent of his
> property and the natural objects of his bounty and to formulate a rational scheme of
> distribution?" would be allowed.

In the same way, here Serth is not offering to answer the factual or legal question of whether

the road was "defective" (an "inadequately explored legal criteria") for the jury to adopt

wholesale, or even to offer his definition of the term "defective." <u>Compare</u> <u>United States v.</u>

<u>Scop</u>, 846 F.2d 135, 141-42 (2d. Cir.), <u>rev'd in part on reh'g on other grounds</u>, 856 F.2d (2d

Cir. 1988) (expert witness testimony improper as it offered "highly prejudicial" legal

conclusions which repeatedly tracked the precise text of statutes and regulations allegedly

violated and used judicially defined legal terms); <u>cf</u>. <u>United States v. Duncan</u>, 42 F.3d 97, 101-

02 (2d Cir. 1994) (expert witness' testimony, based upon his "own investigation of the facts

and review of the records" and which contained an isolated opinion which tracked the language

of a statute allegedly violated, was properly admitted at trial); <u>Zuchel v. City and County of</u>

<u>Denver</u>, 997 F.2d 730, 742 (10th Cir. 1993) (in civil rights action alleging wrongful death at

hands of police, trial court properly allowed use of expert testimony that officer's use of deadly force fell below accepted standards of law enforcement, but expert opinion that such conduct was unconstitutional would have been improper).

As discussed above, based upon his review of the facts of the case, his first hand observations from his two inspections of the road, and his specialized knowledge, experience and training, Serth will opine that the road had maintenance, resurfacing, drainage, and other issues; he will discuss the condition(s) of the road because of those issues, how long such condition(s) had likely existed, and what and who caused those issues, including that the Town of Sherman (the one maintaining the road) caused those issues. Serth also has opinions as to the defendant's knowledge of the condition of the road as well as on causation and whether plaintiff's conduct contributed to his fall and injuries.[6]

Such testimony of Serth will assist the jury in determining whether that road (with its maintenance issues and resultant deteriorated condition) was "defective" as instructed by the Court (the first Lukas element), and if the jury finds the road "defective," if the defendant had actual or constructive notice of it (the second Lukas element), and had a reasonable time to remedy such defect, under all the circumstances (the third Lukas element).[7]

---

[6] In the event that the Court finds that these, or any, of Serth's opinions embrace ultimate issues of fact or law, such opinions are still admissible per Rule 704 (see infra Section III. B of this Memorandum of Law).

[7] Insofar as Serth also testifies to the general layout of the road per his two inspections, and educates the jury on background (based upon his specialized knowledge as a highway engineer)

For example, at his deposition Serth testified that the assumed deteriorated road condition at the time of the accident was indicated by the long term lack of maintenance visible on the road at the time of his personal inspections two months after the injury:

> The assumption [that the deterioration of the road existed prior to April 2002 at the time of the accident is] it's been going on for years. The grass growing in this mound… [identifying mound on a photograph] This is dirt from last winter. It's been mounded up for years. It's not like something somebody scraped up from the year before. The pavement has multiple thin overlays, patches all over the place.  There is different types of overlays, patches. It's been going on for years.  The dirt berme [sic] that used to slope away three quarter inch per foot. It's been since dirt roads. Now it doesn't slope away.  There is a dirt berm there. That wasn't something that happened in a month or two. It's been allowed to sit there for years.  It is years of lack of maintenance.  Only maintenance being done was going in and filling up these holes instead of taking dirt away. You don't have to buy anything.  You are paying for asphalt to be put in there that is being thrown out.

(Serth deposition, Exhibit 2, pp. 165-66).

Serth also testified that the drainage system had been improperly maintained allowing a dirt berm "between the road and the entrance to that pipe that kept the water from getting into

---

relating, for example, to drainage techniques, maintenance of roads, road deterioration, the pros and cons of certain resurfacing/patching techniques, etc., such testimony is proper evidence for the jury to take into account in connection with its determination of whether one or more of the defects (as alleged in plaintiffs' complaint) existed and caused Mr. Bernstein's devastating injury on the day in question and whether Defendant had notice and should have ameliorated the situation.  See, e.g., <u>Hickey v. Newtown</u>, 150 Conn. 514, 519 (1963) (alleged §13a-149 defect of accumulated sand and gravel on road; "the general contour of the road and its grade, curve, lack of warning signs and lack of space for pedestrians were all proper circumstances to be taken into account in connection with the defect which actually caused the automobile to skid and strike the plaintiffs").

the pipe." (Id. at p. 84). "[The water] had to run on the road." (Id.).  Over time, such water on

the roadway would seep into the road and cause severe road deterioration.  (Id. pp. 87 and 99).

Similarly, Serth testified that the soil buildup allowing tall grass to grow was

accumulated over a series of years and held the water on the roadway, and this factor, in

conjunction with the  potholes present at the time of his inspection indicated that the road's

surface had a "substantially" similar potholed condition two months earlier when plaintiff was

injured.  Id. at 134-36.  "It was not an area of good pavement in April of 2002."  Id. at 135-136.

See also id. at 170-74 (ruling out possibility that all potholes and broken overlay in photographs

taken by Serth in site inspection two months after plaintiff's injuries were patched potholes

(presenting smooth pavement) at time of plaintiff's fall; "From my engineering experience, I

believe that is very, very unlikely," and "[t]he deteriorated overlay there has the alligator crack

in it. The alligator crack is not something that is going to happen in two months.  Alligator

cracks cannot be fixed with cold patching.").  Here, Serth's specialized knowledge of

maintenance of roads (and what lack of maintenance looks like and can do to cause

deterioration in the road) allows him to educate the jury and to offer opinions of fact as to the

condition of the road on the day Plaintiff was injured.

Serth also has the opinion that the Town knew of the dramatic change in the "good

repair" pavement of Church Road to the rough pavement where Plaintiff fell (Serth's Report, p.

4, Exhibit B to Defendant's Memorandum in Support of Motion In Limine), based upon facts

reviewed (the defendant's limited maintenance and continual visits to the road) and Serth's site

inspections:

> These guys are saying they are coming through there a couple of times a week. One said everyday…
> ..
> [The Town of Sherman] knew they had paved it up to the accident location and they knew they were out there throwing cold patch into it.  So they knew they had to throw cold patch into the holes there, which would seem to me that they knew there was [sic] holes there… This location – once you are on top of it, it is an obvious hazard. Between their depositions and the totally obvious.  I think it is both sides of your answer.  Somebody should have known, if they were out there on a regular basis as they said they were.  And the depositions, they said they weren't going to resurface that. They didn't say it is good, but they said we are not going to make that type of maintenance."

(Serth Deposition, Exhibit 2, at 126 and 128).  Here, again, Serth is taking facts from the

various depositions -- which experts normally do --  and applying his specialized knowledge

about road patching and maintenance and offering his conclusion that the Town was aware or

should have been aware of the dangerous condition of the road which caused plaintiff's fall and

injuries.

At his deposition, Serth also testified that improper maintenance of Church Road by the

Town of Sherman caused roadway conditions that promoted accidents[8]:

> My concern is the sudden deterioration of the pavement, why it is out there, why there is no economic reason to leave something like that out there. I think, beyond that, I am saying you don't leave rough pavement because it would tend to promote accidents.  I

---

[8] Mr. Serth testified that he reviewed the deposition of Mr. Borokowski, Supervisor of Highways for the Town of Sherman, as well as reviewed the plans for maintenance of the roads for five or more years of the Town of Sherman and the Town's highway log which recorded maintenance done by the Town. (Serth Deposition, Exhibit 2, at 10).

think it is for others to say that the – we know the bike went down in the area as soon as he hit this pavement.  We know he's saying he's braking ahead of time because of this.  Someone is going to have to connect these dots.  I can't say it was this one pothole right there that got the guy.  I would say it is an area that has a maintenance problem. From an engineering standpoint, what caused that area? Here is why it would have been cheaper to take care of that area, to do correct maintenance instead of wasting money on proper maintenance.

(Serth Deposition, Exhibit 2, at 149-50).

It is manifest that this testimony will assist the jury on the issues of notice and whether the defendant had time and resources to remedy the situation, all elements needed to be proved under Lukas. See Smith v. Town of Milford , 89 Conn. 24, 33 (1914) ("While there was no evidence or finding that the town had received any direct notice of the defect, yet actual notice need not be shown.  If the defect had continued such a length of time as to become notorious, and to justify the presumption that its existence was known to the agents of the party charges with the duty  of keeping the street in repair, notice will be presumed."); Motyl v. City of New Haven, 2001 Conn. Super. LEXIS 2808, at *17 (Sept. 24, 2001) ("Conspicuousness of the defect… must be taken into effect concerning reasonableness because "[n]otice of a particular defect depends not on whether a reasonable inspection of a particular street would have disclosed it but rather whether the defect would have been disclosed by a reasonable inspection of the streets as a whole."") (quoting Mausch v. Hartford, 184 Conn. 467, 469 (1981)).  For all the above reasons, Serth's testimony, opinions and report regarding the condition of the road on the day of plaintiff's injury, the way the road got into that condition, how long such road

condition existed, who or what caused the road's condition, and whether the Town had notice of the road's condition, are admissible.

**B.    In the alternative, if the court finds that any of Serth's opinions do constitute legal or factual conclusions, those conclusions are admissible under Fed. R. Evid. 704.**

The decision whether to admit expert testimony is left to the discretion of the trial judge.  United States v. Schwartz,  924 F.2d 410, 425 (2d Cir. 1991).  The general rule is that if there are doubts whether expert opinions will assist the jury, they should be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusion.  3 J. Weinstein & M. Berger, Weinstein's Federal Evidence ¶ 702[02], at 702-14—702-15 (1987)).  Here, there are no issues of time or surprise: Serth was disclosed long ago and has been deposed.

This is true even in the case where the expert embraces an ultimate issue to be decided by the jury, or states a legal conclusion, which is "not inadmissible per se… [unless] it is based on 'inadequately explored legal criteria.'"  Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705, 709 (2nd Cir. 1989) (quoting United States v. Scop, 846 F.2d 135, 140 (2d Cir. 1988) (quoting Advisory Committee Note to Rule 704). As discussed above, Serth's testimony and opinions are not based upon "inadequately explored legal criteria."

Rule 704 of the Federal Rules of Evidence provides in pertinent part:

>    …testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The policy underpinning Rule 704 is the practical realization that allowing "opinion testimony on ultimate issues frequently will assist the jury to resolve those issues.  In fact, such testimony often is indispensable."   Wright & Gold, <u>Federal Practice and Procedure:</u> Evidence § 6282, at 366.  <u>Accord</u> <u>United States v. Duncan</u>, 42 F.3d 97, 101 (2d Cir. 1994) ("Because of their specialized knowledge, [expert witness] testimony can be extremely valuable and probative.")  As discussed above, Serth's expert knowledge of safe road construction and maintenance and how various inadequacies in maintenance can, over time, lead to dangerous conditions on roads will help the jury decide the issues of the defect, notice and failure to remedy the defect within a reasonable time.

Rule 704 rejects the common law doctrine that opinion testimony on the ultimate issue "usurps the function of the jury" because it is assumed that the jury is free to reject the expert opinion and has the ability to accurately "weigh evidence and evaluate witness credibility." Wright & Gold, <u>supra</u>, § 6282, at.366-67.   This is especially true if, as here, the expert is subject to cross examination and competing expert opinions. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc</u>., 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  <u>See</u> <u>also</u> Wright & Gold, <u>supra</u>, § 6262, at 184-185 ("Importantly, however, Rule 702 on its face creates no general power in the trial judge to exclude expert testimony on the grounds it is unreliable…the power to evaluate the credibility of witnesses and give testimony its proper weight primarily resides

with the trier of fact."); 1 McCormick, <u>Evidence</u> §13, at 56 n.15 (4th ed. 1992) ("Under Fed. R. Evid. 702, 703 and 705, the expert may testify only in terms of opinion subject to cross examination and may base an opinion upon matters not of record – provisions which seem to indicate an overall intent that the questioning of the basis for an opinion should usually go to the weight and not to the admissibility of the opinion.")

    Serth has been deposed, and will be available to testify. There is no danger that the defendant will not have another chance to thoroughly inquire into the reasons for Serth's opinions (and expose any claimed weaknesses). <u>International Adhesive Coating Co. v. Bolton Emerson International, Inc.</u>, 851 F.2d 540, 545 (1st Cir. 1988) ("[T]he fact that an expert's opinion may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility… When the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury.").

    Here, if the court finds that any of Serth's opinions or testimony embrace ultimate conclusions of fact or law, the court should not preclude them. Fed. R. Evid. 704 expressly allows for such testimony inasmuch as Serth's opinions are not based upon any "inadequately explored legal criteria" and he will be available for cross examination.

    Moreover, the defendant *itself* has disclosed Serth to testify as to certain conclusions of fact and law, such that that road "was in good repair up to the town line" and that the "cracks in the pavement on Church Road leading up to the wooden slatted fence as one travels from

Sherman into New Milford do not render the road unsafe or in a dangerous condition." (See Exhibit 3,  Defendant's Expert Disclosure, dated May 14, 2004, at 3-4).  It seems inconsistent for defendant to move to preclude Serth's opinions which it claims embrace ultimate issues if they help plaintiffs' case, yet to expect the Court to receive into evidence opinions from the same witness which embrace ultimate issues arguably in defendant's favor.

Similarly, defendant has disclosed an alleged bicyclist expert (Speier) who will testify to the same or related "ultimate issues" which defendant seeks to have precluded in Serth's testimony. (See id.).  For example, defendant's expert disclosure states that Speier will testify that the road "was not dangerous, and was reasonably safe," and also that plaintiff was responsible at least in part for his own injuries: "Mr. Speier will testify that just prior to the plaintiff's accident the plaintiff was traveling at a rate of speed…in his opinion the plaintiff was traveling too fast for conditions." (Id. at 4-5).  It would be unjust to have all such "ultimate issue" evidence helpful to defendant's case admitted while precluding similar evidence favoring plaintiff.  Defendant's motion should be denied.

**IV.    Serth's Testimony and Opinions as to Causation of the Accident and that Plaintiff's Conduct Was Not A Proximate Cause Are Admissible**

Defendant also moves to preclude Serth's opinions that the road caused plaintiff to be injured and that plaintiff's conduct did not play a substantial part in the crash. Defendant contests the admissibility of these opinions on the basis that 1) Serth is not qualified to render these opinions; 2) the opinions are based on evidence that is inadequate to support the

conclusions he reaches; 3) the opinions will not "assist" the trier of fact  because they are legal

conclusions and such opinions are not scientific so no expert is needed on these issues.  These

objections should be disregarded.

**A.**    **Serth Is Qualified to Render An Opinion on Causation and Plaintiff's  Lack of**
         **Contributing Substantially to His Own Injuries**

Defendant wrongly argues that because Serth is not "an expert in bicycle operation or safety"[9]

that he cannot opine about causation and lack of contributory negligence.  Serth, who has a

masters in civil engineering, and who should easily qualify as a highway engineer expert, under

the rules can opine about the road's condition and that it caused the accident and that Stephen

Bernstein himself did not cause the accident.  The fact that Serth is not a "bicycle operations"

expert is not relevant to anything except perhaps the weight for the jury to give his opinion (if

the jury accepts defendant's arguments), given his training and experience and specialized

knowledge of what constitutes a safe road.  That allows him to offer these opinions that will

"assist" the jury on these issues.

         Most simply, Serth will testify that the road's condition changed "suddenly and without

warning," (Exhibit B to Defendant's Motion *In Limine*, at 2), at the location where Bernstein

---

[9] In fact, Serth testified as follows:  Question: Do you consider yourself an expert in bicycle
operation? Serth Testimony: "*Not really more than the highway part. I could explain some
things from an engineering standpoint, but I'm not a bicycle expert.*" Question: Do you
consider yourself an expert in bicycle safety?  Serth Testimony: "*I have done analysis for the
town [of Clifton Park] as far as bicycle paths, stuff like that. As far as operation of bicycles, I
don't get into.*"   Serth then testified that he has actually designed bicycle paths for the
municipality of Clifton Park.  (Serth Deposition Testimony, Exhibit 2, at 145-46).

fell and that "[i]n this area where maintenance problems discouraged the drainage of water from the pavement, the pavement changed from a well maintained surface to a collection of patches and holes."  <u>Id</u>.  In the "*Conclusions*" section of his Report, Serth opines that "[t]he uneven and loose surface caused the bicyclist to fall down."( <u>Id</u>. p. 4).  He testified consistently in his deposition:

> As we can see in Exhibit 1-G, [the road] doesn't look terrible as you are approaching it from less than 200 feet away, but as we see in photograph 1-E, which is looking back the other way from less than 200 feet away, or about 200 feet away, the pavement is falling apart. So, it's not like there is a big sign there that says pavement ends or rough pavement or any bump or anything like that.  It is what you can see. And you really can't see until you are right on top of it.

(Serth Deposition, Exhibit 2, at 120).

Serth's conclusion that Bernstein's conduct had no part in the accident was based upon the road's condition before the location where plaintiff fell and the "sudden deterioration" at the location where plaintiff fell, the testimony of other bicyclists and Mr. Bernstein's testimony: "What [plaintiff] was doing on the road up until that point was fine.  He didn't have warning there was a sudden change."  (<u>See</u> <u>id</u>. at 145).

"Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth." <u>Mannino v. International Mfg. Co</u>**.,** 650 F.2d 846, 851 (6th Cir. 1981).  The weight of the expert's testimony must be for the trier of fact to evaluate.  "It must be remembered that the

court is not the judge of the quality of the evidence, nor does the witness perform the function of a juror, he can only contribute something to the jury's information and if he can, he should be permitted to do so." <u>Bratt v. Western Air Lines</u>, 155 F.2d 850, 854 (10th Cir. 1946).

Inasmuch as the issue here is of a defective <u>road</u>, limiting expert testimony to strictly "bicycle operations" or "bicycle safety" as defendant suggests, is senseless; obviously, bicycle operation in conjunction with <u>a safe roadway</u> is pertinent. Serth is a highway engineer with decades of experience and specialized knowledge about road construction, planning, surfacing and maintenance. Serth began his career nearly 30 years ago in 1979 as an engineering aide on a surveying crew for the New York State Department of Transportation. (<u>See</u> Serth's Curriculum Vitae, Exhibit 1; Serth Deposition, Exhibit 2, at 45-68**).  Then**, he was a construction inspector in New York regarding intersection reconstruction, including pavement, curb and drainage construction. Thereafter, Serth went to graduate school at SUNY Buffalo to earn his degree in civil engineering, worked as a student teacher in undergraduate highway-related civil engineering courses, and also worked as a lab assistant in a cold mix asphalt laboratory. During the same time period, Serth also conducted road surveys for his father's engineering company. (Serth Deposition, Exhibit 2, at 47)  After receiving his master's degree in civil engineering in 1983, Serth was employed as a transportation analyst at New York's Department of Transportation's Project Development Bureau, making decisions on how to utilize the resources available between roadway projects, including whether and when roads would be paved or repaved. (<u>Id</u>. at 48).   Next, he worked for four years in the New York

Department of Transportation Design Bureau where he designed transportation projects. Following that, he obtained his engineering license and was promoted to the Consultant Management Bureau where he worked on bigger projects. During this time, he was involved in making the maintenance decisions on the roadways, (id. at 50), and developed cost estimates for projects. (Serth Curriculum Vitae, Exhibit 1, at 2)  He has been a private consultant since 1992.  In the last five years, he has consulted on roughly 100 cases a year.  (Serth Deposition, Exhibit 2, at 56).  He has consulted on many cases where a deteriorated roadway was involved, including snow and ice and ponding cases, although, of course, has never consulted in a case precisely like the case *sub judice*.  (Id. at 62-68).

As his years of experience, education and training suggest, Serth is uniquely qualified to testify about road maintenance and what is safe to have as a roadway.  Bicycles ride on roads, and roads must be designed and maintained to take bicycle riders into account.  His background allows Serth to offer opinions about causation, which could "assist" the jury  and which the jury is capable of accepting or rejecting.

Baumholser v. Amax Coal Co., 630 F.2d 550 (7th Cir. 1980), is instructive.  In Baumholser, plaintiff's geologist was allowed to testify that the defendant's blasting operations caused damage to the foundation of plaintiff's home two miles away.  The court allowed the expert causation testimony because the court found the testimony within the expertise of the geologist, despite the fact that the geologist had little to no experience in the study of blasts from coal mines:  "The fact that [plaintiff's expert] had little actual experience in the study of

coal mining operations did not disqualify him from expressing his opinion, which was based on general geological principles." Id. at 551. In the same way here, Serth's opinions regarding causation (and lack of fault on plaintiff's part) are based on his expertise in the general principles of what constitutes safe road construction and maintenance and his review of the facts of the case. The Baumholser court also found that the usual safeguards at trial of thorough cross-examination, as well as opposing expert opinions being offered by the defense, eliminated any prospect of undue prejudicial effect upon the jury. Id. at 553. See also Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989), cert. denied, 493 U.S. 1073 (1990) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion."); Spray-Rite Service Corp. v. Monsanto Co., 684 F.2d 1226, 1241 (7th Cir. 1982) (civil antitrust plaintiff's expert allowed to testify even though he was not expert in all fields related to marketing analysis); Cunningham v. Gans, 507 F.2d 496, 500 (2d Cir. 1974) (court erred in precluding opinion that clamp used should have been able to support pipe being installed offered by pipefitter with 33 years of experience and who had designed dies for making pipe-hangers for 15 years; fact that he was not a metallurgist did not disqualify him as expert given his practical experience, and defendant free to cross-examine him on any "shortcomings in his qualifications"); DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (1st Cir. 1988)(trial court did not abuse discretion in allowing mechanical engineer to give opinion as to safety of design of defendant's machine, even though expert had no experience with the machine); Exum v. General Electric Co., 819 F.2d. 1158,

1163 (D.C. Cir. 1987) (injury allegedly caused by deep fryer; trial court abused discretion in precluding testimony of engineer who had experience with industrial safety and product design but no specific experience in kitchen or fast-food kitchen design); Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 781-82 (3d Cir. 1996) (trial court abused discretion in precluding plaintiff's treating doctor (an internist), from testifying of his diagnosis of asbestosis related to exposure on defendant's ship, on the grounds that he was not an oncologist, or specialist in cancer; "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." ). Inasmuch as Rule 702 carries with it a relatively low "assist" standard of admissibility, Serth should be allowed to testify on causation and Mr. Bernstein's lack of substantially contributing to his own injuries based upon his expertise as a highway engineer.

**B.    Serth's Opinions are Based on Permissible Grounds.**

Next, defendant complains that even if the Court finds Serth qualified to render opinions as to causation and that plaintiff was not at fault, that the opinions are not based on reliable "data and/or methodology," citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).[10]  In particular, defendant argues that Serth's testimony that he could not

---

[10] Plaintiffs contest the applicability of all the standards enunciated in Daubert (such as the necessity to prove whether the "reasoning or methodology underlying the testimony is *scientifically valid*," Daubert, 509 U.S. at 592-93), because Daubert, strictly speaking, is limited to expert "scientific" knowledge. Id. at 589 n.8). Here, Serth is offering opinions based

identify the "specific condition [that] caused the plaintiff to fall" (Defendant's Memorandum of Law, at 11), but rather testified that "a combination of gravel, a rut, a pothole and a bump was present" (id.) where plaintiff fell indicates that Serth was making an improper assumption that led to his opinion that "the plaintiff hit an area of uneven rough pavement without any prior warning." (Id.)

A fair reading of Serth's deposition testimony is that he explained that his opinions on causation and lack of fault on the part of plaintiff are based upon the facts (from deposition testimony of the eyewitnesses (Speier and Mr. Bernstein himself), and also derived from his expert conclusions about the condition of the roadway on the day in question (based on his own investigation, the deposition of the Town of Sherman's Supervisor of Highways Donald Borkowski, the location of plaintiff's fall as well as the pavement preceding the location of the severely deteriorated area, and his specialized knowledge of roadway construction and maintenance.[11]  See, e.g., Serth Deposition, Exhibit 2, at 163.  However, defendant argues that

---

upon "technical or other specialized knowledge." Fed. R. Evid. 702.  Defendant concedes this, itself complaining that Serth's testimony should be precluded because it is not "scientific." (Defendant's Memorandum of Law, at 12).

[11] For example, Serth testified that the documents he reviewed from the Town of Sherman regarding maintenance records on the road indicated that the Town was only addressing current potholes, but failed to see the big picture of road deterioration that caused the potholes was resulting from a serious drainage issue: "It is fairly obvious there is a drainage problem out there.  Somebody should have been noticing we are dumping sand out here on a regular basis every winter and we are not cleaning it up much in the springtime.  We are building bermes on the side of this road.  Something bad is going to happen if we let this continue for years.  The berme is not something that appears the first year.  We've got areas where we got these bermes

these bases are "inadequate to support the conclusions reached." (Defendant's Memorandum of Law, at 11).

As <u>Daubert</u> made clear, Rule 702 requires that the expert testimony be relevant,[12] and if so, it is considered "helpful" (will "assist") – that is Rule 702's standard for admissibility. The Rules' basic standard of relevance "is a liberal one." <u>Daubert</u>, 509 U.S. at 587.

Expert testimony that is "tied to the facts of the case" and is related to any issue to be determined by the jury will "assist" the jury and is admissible under Rule 702:

> Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 Weinstein & Berger ¶ 702[02], p. 702-18. See also *United States* v. *Downing*, 753 F.2d 1224, 1242 (CA3 1985) ("An additional consideration under Rule 702 -- and another aspect of relevancy -- is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

---

building up. We should be going through on a regular basis and knocking them down to get back what was there originally… Now the berme is built up, the water can't get to the pipe and the pipe isn't cleaned out on a regular basis anyhow…That is moot because the water can't get to it because they built the berme between the berme and the pipe." (Serth Deposition, Exhibit 2, at 81-82).

[12] Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401.

26

Daubert, 509 U.S. at 591.  Here, Serth's opinions are tied to the facts, and are based on the

usual things experts usually rely upon (such as secondhand knowledge and hearsay testimony,

see Fed.R.Evid. 703), as well as on his own specialized knowledge:

> Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer
> opinions, including those that are not based on firsthand knowledge or observation. See
> Rules 702 and 703. Presumably, this relaxation of the usual requirement of firsthand
> knowledge -- a rule which represents "a 'most pervasive manifestation' of the common
> law insistence upon 'the most reliable sources of information,'" Advisory Committee's
> Notes on Fed. Rule Evid. 602, 28 U.S.C. App., p. 755 (citation omitted) -- is premised
> on an assumption that the expert's opinion will have a reliable basis in the knowledge
> and experience of his discipline.

Daubert, 509 U.S. at 591.  Serth's opinion of the facts that the deteriorated roadway caused

Bernstein to fall, and that Bernstein himself did not substantially contribute to the fall, are

reliable as they are properly based upon the facts of the case in combination with Serth's

specialized knowledge.

**C.    Serth's Opinions Are Admissible Under Rule 704 and Will "Assist" the Trier of
       Fact.**

Finally, defendant objects to Serth's opinions on causation and that the conduct of

Bernstein did not substantially contribute to the crash as being impermissible legal conclusions,

and  also argues that such opinions just will not "assist" the jury as they are not "scientific and

not beyond the knowledge of the jury."  (Defendant's Memorandum of Law, at 12).

Defendant's first objection – that  any and all "legal conclusions" offered by an expert are per

se inadmissible --  is ill-founded, and Serth's opinions on causation and lack of fault on the part

of Bernstein are admissible under Rule 704, for the reasons articulated previously in this

Memorandum at Part III.B. The latter objection that the opinions will not assist the trier of fact because they are not "scientific" is also wrong. The case law is clear that where an expert's testimony can help the jury understand the evidence *to any degree*, the testimony serves to "assist" the jury under Rule 702. A requirement for admissibility that expert testimony be beyond the jury's sphere of knowledge adopts a formulation which was rejected by the drafters of Rule 702. Expert testimony allowed under Rule 702 is not limited to overly complex or esoteric matters. United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony may be used on some occasions "to explain even non-esoteric matters"); United States v. Taylor, 18 F.3d. 55, 59 (2d Cir.), cert. denied, 512 U.S. 1226 (1994).

The Advisory Committee's Note to Rule 702 quotes with approval Dean Ladd's statement that the "assist" test is whether a jury "would be qualified to determine … *to the best possible degree* the particular issue without [expert testimony]." Advisory Committee Note to Rule 702 (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952) (emphasis supplied)). Again, Serth's opinions will contribute to the jury's understanding of the issues (and thus will meet the low "assist" threshold of Rule 702) because Serth is offering expert testimony in the form of inferences drawn from the facts and from his specialized knowledge of the roadway's sudden deteriorated condition, that the road was so the cause of plaintiff's crash and that plaintiff's crash was not caused by plaintiff himself. See Advisory Committee Note to Rule 702 ("It will continue to be permissible for the expert to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.").

The jury here should have the benefit of a highway engineer's view of causation and

contributory negligence based upon his expertise of the condition of the road and his review of

the facts of the case from the various witnesses.

**V.     Even If Some of Serth's Opinions are Excluded, His General Testimony About
        Safe Road Construction and Highway Maintenance Are Admissible**

In the event the Court concludes that one or more of Serth's opinions are inadmissible

for any reason, contrary to defendant's blanket motion to preclude the entirety of his testimony,

Serth must be allowed to testify to offer the jury any testimony which "assists" the jury.  Under

Rule 702, expert witnesses are allowed to testify "in the form or an opinion <u>or otherwise</u>."

Thus, even if an expert's opinion is excluded on grounds that it does not assist the trier of fact,

"the inadmissibility of an expert's ultimate opinion does not ban him from the stand altogether,

because his specialized knowledge may assist the trier of fact in other ways." <u>Kopf v. Skyrm</u>,

993 F.2d 374, 378 (4th Cir. 1993).  Experts "may also give test results, describe recognized

principles of their specialized knowledge, provide general background, or simply explain the

evidence." Wright & Gold, <u>supra</u> § 6263, at 197.  "[T]he decision whether to admit expert

testimony does not rest upon the existence or strength of an expert's *opinion.*  Rather, the key

concern is whether expert *testimony* will assist the trier of fact in drawing its own conclusion as

to a 'fact in issue.'" <u>United States v. Rahmu</u>, 993 F.3d 1405, 1411 (9th Cir. 1993) (emphasis in

original).  <u>Cf.</u> <u>Harris v. Pacific Floor March. Mfg. Co.</u>, 856 F.2d 64, 67 (8th Cir. 1988) (in

action for products liability and negligence, trial court did not abuse its discretion in precluding

plaintiff's witness from giving opinion on ultimate question of fact as to adequacy of warning where court permitted expert to explain to jury the criteria by which he would form opinion on that subject, thereby permitting jury to draw its own conclusions).

      If any of Serth's particular opinions are precluded, he should still be allowed to testify. He can give background information and explain the evidence and offer his opinions and testimony, based upon his expertise, about the abruptness of the change in Church Road's condition from a safe pavement to a suddenly severely deteriorated roadway at the location where Plaintiff fell on the date of his site inspections. He can testify about the deteriorated condition of the roadway at the location of the plaintiff's fall (broken pavement/overlay, gravel, stones, alligator cracks, potholes, etc.). He can describe how those conditions occurred, what caused them (including poor maintenance/lack of maintenance/drainage issues, etc.), and how long such conditions took to occur. He can testify as to how long such condition(s) had been extant on Church Road on the date of his site inspections. Finally, he can offer general safety and maintenance information and town obligations relating to maintenance, background regarding roads, including paving, the reasons for occurrences of potholes and cracks, patching of potholes and cracks, and drainage (and relative costs of repairs), consistent with his deposition testimony.

**VI.     Conclusion**

For all the above reasons, Serth's opinions and testimony, as set forth in his report and

deposition, are admissible and defendant's Motion *In Limine* must be denied.

THE PLAINTIFFS

By _____

William M. Bloss
Federal Bar No. ct01008
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Tel:  203-336-4421
FAX:  203-368-3244
Email: bbloss@koskoff.com

31

**<u>CERTIFICATION</u>**

   This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 20th day of June, 2006, to all counsel and pro se parties of record, as follows:

Thomas R. Gerarde, Esq.
Attorney Beatrice S. Jordan
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut 06114

John Sterling, Esq.
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Jesse J. Graham, II, Esq.
Rivkin Radler LLP
EAB Plaza
Uniondale, N.Y. 11556-0926

              _____
              William M. Bloss